744 So.2d 383 (1999)
Keith BRUMFIELD, Appellant,
v.
Dr. C. Foster LOWE and Sean Gill, Individually and in his official capacity as a Police Officer of the City of McComb, Mississippi, Appellees.
No. 97-CA-01112-COA.
Court of Appeals of Mississippi.
June 22, 1999.
*384 Everett T. Sanders, Natchez, Attorney for Appellant.
Rodney D. Robinson, Gulfport, W. Thomas Siler Jr., C. Catherine Scallan, Jackson, Austin R. Nimocks, Gulfport, Attorneys for Appellees.
BEFORE McMILLIN, C.J., DIAZ, AND LEE, JJ.
DIAZ, J., for the Court:
¶ 1. Brumfield appeals the decision of the Pike County Circuit Court granting summary judgment against him. He raises the following issues in this appeal: (1) whether the trial court erred in its application of Mississippi Code Annotated Section 15-1-36 to bar his medical negligence claim, (2) whether the trial court erred in summarily determining that his claim against Officer Gill was barred by sovereign and qualified immunity, and (3) whether the trial court erred in its dismissal of his complaint against Officer Gill as time barred. Finding no error, we affirm.

FACTS
¶ 2. On November 26, 1992, Keith Brumfield broke into his estranged wife's apartment in McComb. At that time, Anita Brumfield and he had been separated for a year and a half. In the apartment, L.J. *385 Nichols shot Brumfield in the side. Anita immediately contacted the McComb Police Department after the shooting. However, Brumfield fled to a neighbor's apartment before the police arrived. Later, Brumfield returned to Anita's apartment, was questioned by police officers, and transported to the Southwest Mississippi Regional Medical Center emergency room.
¶ 3. According to Brumfield's hospital records, the staff who transported Brumfield to the emergency room found him to be incoherent, combative, and extremely uncooperative. It was noted that Brumfield did not want to be transported and had to be handcuffed and loaded into the ambulance by the McComb Police Department. Officer Sean Gill assisted the paramedics and accompanied Brumfield to the hospital.
¶ 4. Upon arriving at Southwest, Brumfield was under the care of Dr. Barry Suber. According to Brumfield, he remained at the hospital for an hour and a half and was given a shot and had his wound treated. In contrast, the Southwest medical records indicated that Brumfield was at the hospital for nearly three hours. Brumfield's medical records further reflect the extensive treatment and testing he received and indicated that he remained combative and uncooperative.
¶ 5. The hospital records indicate that Brumfield was examined and treated by Drs. Barry Suber, Thomas Jeffcoat, and C. Foster Lowe for his gunshot wound. Dr. Jeffcoat reported that although the bullet may need to be removed in the future, "no other treatment [is] needed now." Dr. Lowe stated that Brumfield was difficult to evaluate and schizophrenic. The records also indicate that Dr. James Boothe took at least four sets of x-rays of Brumfield that same night.
¶ 6. Officer Gill testified that Brumfield resisted all treatment and repeatedly attempted to leave the hospital. However, once the staff began treating Brumfield, Officer Gill left the hospital and resumed his patrol duties. When Officer Gill returned to the hospital on an unrelated matter, the staff informed him that Brumfield was being released. Officer Gill was informed that a warrant had been issued for Brumfield's arrest. Dr. Suber issued a certificate stating that Brumfield could be transported to the police station for booking and incarceration. Officer Gill took Brumfield into custody and transported him to the McComb City Jail. At the police station, Brumfield was uncooperative and complained that he was sleepy. Officer Gill was unsuccessful in booking Brumfield, so he placed him in a cell for the night.
¶ 7. Brumfield remained incarcerated in the McComb City Jail for nearly twelve hours until he was released on bail. He did not seek further medical care until two days later on the morning of November 29, 1992. Brumfield's subsequent treatment was extensive, and he was not discharged from the hospital until January 4, 1993. Thereafter, Brumfield instituted these causes of action against Officer Gill and Dr. Lowe.
¶ 8. In the present case, Brumfield appeals the entry of summary judgment by the trial court in favor of Officer Sean Gill and Dr. C. Foster Lowe. With respect to his cause of action against Officer Gill, both individually and in his official capacity, Brumfield alleged that Officer Gill failed to provide him with medical treatment.

PROCEDURAL HISTORY
¶ 9. After a voluntary dismissal from the federal district court, the case was filed in Pike County Circuit Court against Officer Gill, Southwest Mississippi Regional Medical Center, and three treating doctors, including Dr. Lowe. The trial judge granted Officer Sean Gill's motion for summary judgment based on sovereign and qualified immunity.
¶ 10. With respect to the cause of action filed against Dr. Lowe, Brumfield filed a civil suit on November 23, 1994, in the *386 Pike County Circuit Court alleging, inter alia, medical malpractice. On March 2, 1995, summons was issued for the Dr. Lowe.
¶ 11. On May 15, 1995, Dr. Lowe filed a motion to dismiss for Brumfield's failure to serve process within 120 days of filing the complaint as required by the rules. On June 14, 1995, the trial court entered an order dismissing the suit against Dr. Lowe unless he was served by June 22, 1995. Although the trial court's order of dismissal was effective on June 22, 1995, Brumfield filed motions on June 26 and June 29, 1995, for enlargement of time to serve Dr. Lowe.
¶ 12. On July 3, 1995, Dr. Lowe was finally served with process in the first suit. Thereafter, Brumfield filed a motion to reconsider the order of dismissal as to Dr. Lowe. After a hearing on the motion to reconsider by Brumfield and a motion to dismiss by Dr. Lowe, the trial judge overruled Brumfield's motion and affirmed his dismissal of the first suit with respect to Dr. Lowe.
¶ 13. On December 20, 1996, Brumfield filed his notice of appeal, filed his designation of the record, but failed to pay his filing fee or file his certificate of compliance. On February 24, 1997, the appeal was dismissed because of these deficiencies.
¶ 14. After the August 21, 1995 hearing on Dr. Lowe's motion to dismiss the first suit, Brumfield filed a second complaint against Dr. Lowe on August 22, 1995. On September 1, 1995, six days before Dr. Lowe was served with process for the second suit, he answered Brumfield's complaint by setting forth the affirmative defense of the statute of limitations. On October 2, 1995, the trial judge consolidated Brumfield's actions against the remaining parties in the first suit and Dr. Lowe in the second suit.
¶ 15. On July 11, 1996, Dr. Lowe filed a motion for summary judgment based on the affirmative defense of the statute of limitations. On August 14, 1997, the trial judge granted Dr. Lowe and Officer Gill summary judgment.
¶ 16. On September 15, 1997, Brumfield properly filed his appeal in the second suit. However, in his notice of appeal, Brumfield noticed the appeal of the two rulings as to Dr. Lowe. Brumfield appeals not only the order of summary judgment entered in the second suit, but again the order of dismissal in the first suit.

DISCUSSION

I. WHETHER THE TRIAL COURT ERRED IN ITS APPLICATION OF MISSISSIPPI CODE ANNOTATED SECTION 15-1-36 TO BAR BRUMFIELD'S MEDICAL NEGLIGENCE CLAIM
¶ 17. The standard of review for the appeal of a granted motion for summary judgment is de novo. Collier v. Trustmark Nat'l Bank, 678 So.2d 693, 695 (Miss.1996). Summary judgment is appropriate where "there is no genuine issue as to any material fact," and therefore, reasonable minds cannot differ as to the disposition of the issues presented for review. Miss. R. Civ. P. 56(c). The moving party is entitled to a judgment on the merits as a matter of law and summary judgment must be ordered. Miss. R. Civ. P. 56(c) & cmt.
¶ 18. In Mississippi, medical malpractice tort claims are controlled by Mississippi Code Annotated Section 15-1-36 (Rev.1995) instead of the general six-year statute of limitations which is now three years as provided in Section 15-1-49. Kilgore v. Barnes, 508 So.2d 1042 (Miss.1987). In pertinent part, Section 15-1-36 provides that:
[N]o claim in tort may be brought ... for injuries ... arising out of the course of medical, surgical, or other professional services unless it is filed within two (2) years from the date the alleged act, omission or neglect shall or with reasonable *387 diligence might have been first known or discovered.
As indicated by the plain language of the statute, Mississippi employs the discovery rule in making limitations determinations in medical malpractice claims. Fortenberry v. Memorial Hosp. at Gulfport, Inc., 676 So.2d 252, 255 (Miss.1996). Under Smith v. Sanders, 485 So.2d 1051, 1052 (Miss.1986), the Section 15-1-36 two-year statute of limitations commences when the patient does or should discover a basis for a medical malpractice cause of action. Under Fortenberry, this is a proper question for resolution by the trial judge. Fortenberry, 676 So.2d at 255. Furthermore, when the applicable statute of limitation is tolled by the filing of a complaint, that tolling ends 120 days after the complaint was filed. Watters v. Stripling, 675 So.2d 1242, 1244 (Miss.1996).
¶ 19. Mississippi Code Annotated Section 15-1-59 provides in part that:
If any person entitled to bring any of the personal actions mentioned shall, at the time at which the cause of action accrued, be under the disability of infancy or unsoundness of mind, he may bring the actions within the times in this chapter respectively limited, after his disability shall be removed as provided by law.
¶ 20. "The term `unsound mind,' when used in any statute in reference to persons, shall include idiots, lunatics, and persons non compos mentis." Miss.Code Ann. 1-3-57 (Rev.1998). The Mississippi Supreme Court addressed the law regarding mental competency and statutes of limitation in Shippers Express v. Chapman, 364 So.2d 1097, 1100 (Miss.1978):
[T]he test as to whether the claimant is so "mentally incompetent" as to toll the running of the statute of limitations, is this: Is his mind so unsound, or is he so weak in mind, or so imbecile, no matter from what cause, that he cannot manage the ordinary affairs of life?
"The purpose of the savings statute is to protect the legal rights of those who are unable to assert their own rights due to disability." Rockwell v. Preferred Risk Mut. Ins. Co., 710 So.2d 388, 391 (Miss. 1998).
¶ 21. When Brumfield sought additional medical treatment for the gunshot wound on November 29, 1992, and was not released from the hospital for six weeks, he knew or should have known that he had an injury for which he might be compensated. However, Brumfield did not file a cause of action until six day before the statute of limitations ran out. Pursuant to Mississippi Rule of Civil Procedure 4(h), once Brumfield filed, he had 120 days to serve the Dr. Lowe. Despite an extension of time from March 23, 1995, to June 22, 1995, to serve Dr. Lowe, it was not until seven months later on July 3, 1995, that Dr. Lowe was properly served with process. Although the order extending time was entered on June 14, 1995, its effective date was June 22, 1995. Since the tolling ended on March 23, 1995, 120 days after the complaint was filed, Brumfield had only six days to refile his action against Dr. Lowe before the time limit finally ran out. Nevertheless, it was not until August 22, 1995, that Brumfield filed his second complaint against Dr. Lowe. Since Brumfield failed to file his claim for medical malpractice within the applicable time limits, Dr. Lowe's motion for summary judgment based on failure to file within the appropriate time limits was properly granted.
¶ 22. Brumfield also asserts that his claim was tolled because he suffered unsoundness of mind during this period. Although Brumfield produced evidence that he received social security disability for schizophrenia, the trial judge ruled that Brumfield was capable of managing his own affairs: "He was married, had children, managed his own money, hired an attorney to file three lawsuits and testified very coherently and competently at his discovery depositions." Since there was *388 no evidence of mental incompetency, no genuine issue of fact exists as to whether or not Brumfield was competent. Therefore, the statute of limitations was not tolled for unsoundness of mind in this case because it was not proven. Therefore, this assignment of error is without merit.

II. WHETHER THE TRIAL COURT ERRED IN SUMMARILY DETERMINING THAT BRUMFIELD'S CLAIM AGAINST OFFICER GILL WAS BARRED BY SOVEREIGN AND QUALIFIED IMMUNITY
¶ 23. In Kentucky v. Graham, 473 U.S. 159, 165-66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), the United States Supreme Court stated:
Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." (citation omitted). As long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity....
Mississippi law has been construed to recognize suits against public officials in their official capacity as being suits against the governmental entity they represent.
¶ 24. Although confusing, Brumfield's appeal seems to be focused more on the issue of qualified immunity with respect to Officer Gill than the issue of sovereign immunity. Therefore, we will address that aspect of Brumfield's claim.
¶ 25. When Brumfield's cause of action arose, police officers and other public officials in Mississippi were entitled to qualified immunity under Mississippi common law. Barrett v. Miller, 599 So.2d 559, 564 (Miss.1992). The purpose of the public official qualified immunity doctrine is to protect public officials in their decision-making roles and to encourage and safeguard their ability to exercise their discretion. State v. Lewis, 498 So.2d 321, 322 (Miss.1986). Therefore, a public official is shielded by qualified public official immunity unless:
his breach of a legal duty causes injury and (1) that duty is ministerial in nature, or (2) that duty involves the use of discretion and the governmental actor greatly or substantially exceeds his authority and in the course thereof causes harm, or (3) the governmental actor commits an intentional tort. Beyond that, a governmental official has no immunity when sued upon a tort that has nothing to do with his official position or decision-making function and has been committed outside the course and scope of his office.
McFadden v. State, 542 So.2d 871, 877 (Miss.1989)(emphasis added).
¶ 26. Brumfield asserts that the arrest by Officer Gill constituted a ministerial act, and therefore, Officer Gill was not subject to the qualified immunity defense. The Mississippi Supreme Court set forth the definition of ministerial acts as: those acts "positively imposed by law [with] performance required at a time and in a manner or upon conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion." Poyner v. Gilmore, 171 Miss. 859, 158 So. 922, 923 (1935). To determine whether the qualified immunity defense is applicable, the facts of each case must be considered to determine whether the first element existsa breach of a legal duty that caused an injury. Sykes v. Grantham, 567 So.2d 200, 211 (Miss.1990)(holding that parole board entitled to qualified immunity when it substantially complied with duties and requirements set forth in statute and where there was no violation of their ministerial duties). Although Brumfield alleges that Officer Gill performed a ministerial duty *389 by taking him into custody pursuant to an arrest warrant, Brumfield does not assert that Officer Gill breached this "ministerial duty." Since an actual breach is not alleged, much less argued, we will instead consider Brumfield's claim that Officer Gill had a ministerial duty to provide medical treatment.
¶ 27. Since a physician released Brumfield from his care to go to jail, Officer Gill relied on those medical determinations to make the arrest. Certainly, it would be a discretionary act, not a ministerial one, to provide more medical care to Brumfield only thirty minutes after his release from the hospital. Brumfield's behavior-combative, uncooperative, and stuporous-was observed by the hospital staff, yet he was still released to go to jail. Furthermore, although Brumfield claims that he was denied medical attention, he did not seek medical help until two days after his release from jail. These facts indicate that Officer Gill was performing a discretionary function for which he cannot be held liable. Additionally, under McFadden, any breach of a discretionary duty by a public official must be the cause of the plaintiffs injury. McFadden, 542 So.2d at 877. As discussed supra, Officer Gill relied on Brumfield's medical release to arrest and take him to jail for booking. During this time, Brumfield only requested mild pain relievers and appeared to be sleepy. Brumfield failed to prove at the trial level and now that Officer Gill's action were the cause of his injuries. Since there is no breach of a duty of any kind with respect to the arrest nor a causal connection, Officer Gill is entitled to qualified immunity. Therefore, this assignment of error is without merit.

III. WHETHER THE TRIAL COURT ERRED IN ITS DISMISSAL OF BRUMFIELD'S COMPLAINT AGAINST GILL AS TIME BARRED
¶ 28. Mississippi Code Annotated Section 15-1-35 (Rev.1995) sets forth the applicable limitations for certain intentional torts:
All actions for assault, assault and battery, maiming, false imprisonment, malicious arrest, or menace, and all actions for slanderous words concerning the person or title, for failure to employ, and for libels, shall be commenced within one (1) year next after the cause of such action accrued, and not after.
¶ 29. Mississippi Code Annotated Section 15-1-49 (Rev.1995) outlines the appropriate limitations periods which are applicable to actions not otherwise specifically provided for:
(1) All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after.
(2) In actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury.
(3) The provisions of subsection (2) of this section shall apply to all pending and subsequently filed actions.
¶ 30. The pertinent subsection of Mississippi Code Annotated Section 15-1-36 (Rev.1995) addresses the limitations period which is applicable to a malpractice action arising from medical, surgical, or other professional services:
(1) For any claim accruing on or before June 30, 1998, and except as otherwise provided in this section, no claim in tort may be brought against a licensed physician, osteopath, dentist, hospital, nurse, pharmacist, podiatrist, optometrist or chiropractor for injuries or wrongful death arising out of the course of medical, surgical or other professional services unless it is filed within two (2) years from the date the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered.
*390 ¶ 31. Furthermore, Mississippi Code Annotated Section 11-46-3 addresses sovereign immunity and states in pertinent part that:
(1) The Legislature of the State of Mississippi finds ... that the "state" and its "political subdivisions," ... are not now, have never been and shall not be liable, and are, always have been and shall continue to be immune from suit at law or in equity[1] on account of any wrongful or tortious act or omission or breach of implied term or condition of any warranty or contract, including but not limited to libel, slander or defamation, by the state or its political subdivisions, or any such act, omission or breach by any employee of the state or its political subdivisions, notwithstanding that any such act, omission or breach constitutes or may be considered as the exercise or failure to exercise any duty, obligation or function of a governmental, proprietary, discretionary or ministerial nature and notwithstanding that such act, omission or breach may or may not arise out of any activity, transaction or service for which any fee, charge, cost or other consideration was received or expected to be received in exchange therefor.
(emphasis added).
¶ 32. Although Brumfield originally asserted that Officer Gill committed intentional torts against him, he does not articulate any specific intentional torts on appeal. Instead Brumfield alleges negligence against Officer Gill in both his official and individual capacity which he claims is controlled by a three-year non-specific statute of limitations. However, even if Officer Gill was negligent, he is not accountable in his official capacity since sovereign immunity precludes liability for tortious acts. Additionally, as discussed above, since Officer Gill is entitled to qualified immunity, he is not liable as an individual in this instant case. Accordingly, this assignment of error is without merit.
¶ 33. THE JUDGMENT OF THE PIKE COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., COLEMAN, LEE, PAYNE, AND THOMAS, JJ., CONCUR.
BRIDGES AND IRVING, JJ., NOT PARTICIPATING.
NOTES
[1] That part of the new Mississippi Tort Claims Act which provides for a limited waiver of sovereign immunity under certain circumstances, was not effective as to political subdivisions until October 1, 1993.