Valerie P. HAMPTON, Plaintiff,

v.

GANNETT CO., INC. OSA, Gannett River States Publishing Corp., D/B/A the Clarion and Ledger, and Dale Martin, Defendants.

No. CIV.A. 3:02–CV–1342BN.

United States District Court,
S.D. Mississippi,
Jackson Division.

Dec. 15, 2003.

dant Gannett Co., Inc. and Defendant Gannett River States Publishing Corp., d/b/a The Clarion Ledger (hereinafter collectively referenced as "Gannett"). The Motion was filed on October 15, 2003. Having considered the Motion, Response and Rebuttal, as well as binding legal authority, the Court finds that the Motion for Summary Judgment is well taken in part and should be granted in part, and that the Motion is not well taken in part and should be denied in part.

James Lloyd Powell, Frascogna Courtney, PLLC, Roy J. Perilloux, James Eldred Renfroe, Perilloux & Associates, P.A., Joyce W.C.N. Funches, Attorney, Jackson, MS, for plaintiff.

William T. Siler, Jr., Louwlynn V. Williams, Phelps Dunbar, LaToya C. Merritt, Phelps Dunbar, Jackson, MS, for defendants.

### OPINION AND ORDER

BARBOUR, District Judge.

This cause is before the Court on the Motion for Summary Judgment of Defen-

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY [1]

This case arises out of alleged employment discrimination suffered by Plaintiff Valerie Hampton. Plaintiff alleges that she suffered discrimination based on her gender, female, and based on her religion, Apostolic. The claims for gender discrimination and religious discrimination are brought under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* and under 42 U.S.C. § 1981. The Complaint also states related state law claims of assault and battery, infliction of emotional distress, and negligence. A chronology of relevant events follows:

02–02–98: An intra-organization complaint of sexual harassment was alleged by Gannett employee Valerie Austin against Dale Martin. Motion for Summary Judgment, Exhibit "G," Sexual Harassment Complaint. Gannett alleges that Martin was given an oral reprimand, but no written warning was issued.

08–27–98: Plaintiff was hired by Gannett as a part time material handler.

01–11–99: Plaintiff was promoted by Gannett to the position of dispatch clerk. Dale Martin was her supervisor.[2]

03–02–99: Plaintiff attended the "New Hire Orientation" program at Gannett, at which she was informed about procedures regarding the reporting of sexual harassment.

03–??–99: An intra-organization complaint of sexual harassment was alleged by Gannett employee Heloise Smith against Dale Martin.

---

1. The facts stated in this section of the Opinion were obtained from numerous pleadings submitted by the parties. By including the facts herewith, the Court is not attesting to their truthfulness or accuracy.

2. Although Martin is named as a Defendant in the Complaint, he has not been served with process, and the time limit for service of process has expired. Accordingly, Martin is not a party to this suit.

03–??–99: Plaintiff alleges that she had sexual intercourse with Dale Martin at her apartment, after Martin threatened to have her employment with Gannett terminated if she failed to engage in sex with him. No physical force was employed by Martin during this incident.

04–??–99: Plaintiff alleges that she again had sexual intercourse with Dale Martin at her apartment. Martin allegedly again threatened her job if she failed to comply. No physical force was used by Martin in this encounter.

04–13–99: A written warning was issued by Thomas Privett to Dale Martin. Motion for Summary Judgment, Exhibit "H," Memorandum. Privett was Martin's supervisor at Gannett. The warning states "[t]his is to record a final warning to Dale [Martin] for alleged improper sexual advances toward a subordinate. Any additional allegations of this type may lead to further disciplinary action up to and including dismissal." Id.

07–20–99: Plaintiff filed a charge of discrimination against Gannett with the Equal Employment Opportunity Commission (hereinafter "EEOC"). Motion for Summary Judgment, Exhibit "I," EEOC charge form. Under the heading of the EEOC form titled "CAUSE OF DISCRIMINATION BASED ON," Plaintiff placed an "x" in the boxes fronting each of the following: (1) "SEX;" (2) "RELIGION;" and (3) "RETALIATION." Id. (capitols in original).

07–23–99: Plaintiff met with Gannett human resources representative Emma Adams regarding the alleged sexual harassment by Dale Martin.

07–30–99: Dale Martin's employment with Gannett was terminated by Gannett. Motion for Summary Judgment, Exhibit "L," Employment Report.

01–??–00: Plaintiff began a medical leave of absence from her employment with Gannett.

05–31–00: The EEOC issued a Determination letter regarding Plaintiff's EEOC charge of discrimination. Motion for Summary Judgment, Exhibit "K," EEOC Determination letter. Regarding Plaintiff's sex discrimination and retaliation claims, the EEOC stated:

> Evidence indicated that a male supervisor in the Respondent's advertising department used his position to solicit sex from the female employees under his supervision, including Charging Party by constantly reminding them of their probationary status and his authority to discharge them for any reason.
>
> \* \* \* \* \*
>
> Evidence in the record disclosed that the male supervisor created the hostile work environment by making "sex" a term and condition of the female workers under his supervision continued employment.
>
> \* \* \* \* \*
>
> The evidence disclosed that the sexually charged environment was so severe and pervasive that a reasonable person would have been compelled to resign or seek medical treatment.
>
> \* \* \* \* \*
>
> Based on this analysis, I have determined that the evidence obtained during the investigation established a violation of Title VII . . . as follows: That Charging Party was subjected to a hostile work environment, including sexual harassment and that she was compelled to seek medical treatment on the basis of her sex (female) and in retaliation for opposing an unlawful practice.

Id. Regarding Plaintiff's discrimination claim based on religion, the EEOC stated:

> I have determined that the evidence obtained was insufficient to establish a violation of Title VII . . . as to the following: [T]hat the Respondent denied her a religious accommodation because of religion ( [A]postolic faith). Evidence in the record disclosed that the Respondent did grant Charging Party a reasonable accommodation, as requested.

Id. The Determination letter placed Plaintiff on notice that she could file a legal cause of action regarding her religious discrimination claim. Id. However, the claim had to be filed within ninety days after the date of the Determination letter. Id.

01–05–01: Gannett terminated its employment relationship with Plaintiff because of her failure to return from medical leave. Rebuttal in Support of Motion for Summary Judgment, Exhibit "B," Employment Report.

08–13–02: Plaintiff filed the subject Complaint with this Court.

11–13–02: Plaintiff filed her Amended Complaint.

## II. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also, Moore v. Mississippi Valley State Univ.,* 871 F.2d 545, 549 (5th Cir.1989); *Washington v. Armstrong World Indus.,* 839 F.2d 1121, 1122 (5th Cir.1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The movant need not, however, support the motion with materials that negate the opponent's claim. *Id.* As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving par-

ty's claim. *Id.* at 323–24, 106 S.Ct. 2548. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. 2548.

Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. It is improper for the district court to "resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." *Kennett–Murray Corp. v. Bone,* 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is also improper where the court merely believes it unlikely that the non-moving party will prevail at trial. *National Screen Serv. Corp. v. Poster Exchange, Inc.,* 305 F.2d 647, 651 (5th Cir.1962).

## III. ANALYSIS

Each category of Plaintiff's claims is analyzed under the following sub-headings.

### A. Discrimination Based on Religion

Certain prerequisites must be met before a plaintiff can pursue a claim of discrimination under Title VII in federal court. The prerequisites were succinctly set forth in *Taylor v. Books A Million, Inc.,* 296 F.3d 376 (5th Cir.2002). The *Taylor* court held as follows:

Employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court. Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue. *Dao v. Auchan Hypermarket,* 96 F.3d 787, 788–89 (5th Cir.1996). *Title VII provides that claimants have ninety*

*days to file a civil action after receipt of such a notice from the EEOC. Nilsen v. City of Moss Point, Miss.,* 674 F.2d 379, 381 (5th Cir.1982) (citing 42 U.S.C. § 2000e–5(f)(1) (1994)). *This requirement to file a lawsuit within the ninety-day limitation period is strictly construed. See Ringgold v. National Maintenance Corp.,* 796 F.2d 769, 770 (5th Cir.1986); *Espinoza v. Missouri Pacific R.R. Co.,* 754 F.2d 1247, 1251 (5th Cir.1985). *Courts within this Circuit have repeatedly dismissed cases in which the plaintiff did not file a complaint until after the ninety-day limitation period had expired. See, e.g., Butler v. Orleans Parish School Board,* No. Civ. A. 00–0845, 2001 WL 1135616 (E.D.La.Sept.25, 2001) (dismissing Title VII claims where *pro se* plaintiff filed her complaint one day beyond the ninety-day period because she and her husband were prevented from filing on the 90th day, as planned, by family illnesses). Although filing of an EEOC charge is not a jurisdictional prerequisite, it "is a precondition to filing suit in district court." *Dao,* 96 F.3d at 789.

*Id.* at 378–79 (emphasis added). In summary, the *Taylor* court holds that to pursue a claim of discrimination under Title VII, the aggrieved party *must* file suit within ninety days of receipt of the EEOC right to sue letter.

■ In the subject case, Plaintiff's right to sue letter regarding her religious discrimination claim was dated May 13, 2000. The Court reasonably assumes that Plaintiff received the right to sue letter within days after May 13. The subject suit was not filed until August 13, 2002, over two years after issuance of the EEOC right to sue letter. Because Plaintiff failed to file her Title VII religious discrimination cause of action in a timely manner, Defendants' Motion for Summary Judgment on this issue must be granted.

■ To the extent that Plaintiff is asserting her religious discrimination claim under § 1981, summary judgment must be granted on that issue as well. Section 1981 "protects only against discrimination on the basis of race and alienage." *Bhandari v. First Nat'l Bank of Commerce,* 808 F.2d 1082, 1097–98 (5th Cir.1987) (citing *Garner v. Giarrusso,* 571 F.2d 1330, 1340 (5th Cir.1978)). Because § 1981 offers no relief for discrimination based on religion, Plaintiff's § 1981 claim on this issue must be dismissed.

**B. Discrimination Based on Gender**[3]

■ Based on the facts presented above in section I. of this Opinion and Order, Plaintiff claims that she was subjected to actionable sexual harassment. In *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) and *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), the United States Supreme Court set forth a detailed road-map to follow in deciding sexual harassment cases. In the later decided case of *Casiano v. A T & T Corp.,* 213 F.3d 278 (5th Cir.2000), the United States Court of Appeals for the Fifth Circuit reduced the holdings in the aforementioned Supreme Court cases to manageable tests. Excerpts from *Casiano* follow.

At the first stop on the *Ellerth/Faragher* road map, courts are required to determine whether the complaining em-

---

**3.** The Court begins by noting that claims of discrimination under Title VII and claims of discrimination under § 1981 are subject to the same legal tests. *Raggs v. Mississippi Power and Light Co.,* 278 F.3d 463, 468 (5th Cir.2002). Therefore, the Court does not differentiate between Plaintiff's Title VII claims and her § 1981 claims in the following analysis.

ployee has or has not suffered a "tangible employment action." [FN6] If he has, his suit is classified as a "quid pro quo" case; if he has not, his suit is classified as a "hostile environment" case. That determination provides a fork in the road on the *Ellerth/Faragher* map: In a "quid pro quo" case, the road branches toward a second stop at which the court must determine whether the tangible employment action suffered by the employee resulted from his acceptance or rejection of his supervisor's alleged sexual harassment. If the employee cannot show such a nexus, then his employer is not vicariously liable under Title VII for sexual harassment by a supervisor; but if the employee can demonstrate such a nexus, the employer is vicariously liable per se and is not entitled to assert the one and only affirmative defense permitted in such cases since *Ellerth/Faragher*. In other words, proof that a tangible employment action did result from the employee's acceptance or rejection of sexual harassment by his supervisor makes the employer vicariously liable, *ipso facto;* no affirmative defense will be heard.

On the other hand, if the first-stop question is answered in the negative, *i.e.,* the employee did not suffer a tangible employment action—the situation perceived to exist as a matter of law by the district court in this case—the suit is a "hostile environment" case, and the other branch at the fork in the *Ellerth/Faragher* road must be followed. On this branch, a different inquiry ensues at the second stop: If proved, would the actions ascribed to the supervisor by the employee constitute severe or pervasive sexual harassment? If they do not, Title VII imposes no vicarious liability on the employer; but if they do, the employer is vicariously liable—*unless* the employer can prove both prongs of the *Ellerth/Faragher* affirma-

tive defense, to wit: Absent a tangible employment action, (1) the employer exercised reasonable care to prevent and correct promptly any such sexual harassment, and (2) the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise. As noted, this is the employer's only affirmative defense in a supervisor sexual harassment case post *Ellerth/Faragher,* and it is available only in a hostile environment (*no* tangible employment action) situation; never in a quid pro quo (tangible employment action) case.

As the affirmative defense is applicable only when the asserted sexual harassment by a supervisor has *not* produced a tangible employment action, the court cannot merely assume *arguendo* the presence of actionable harassment with a nexus to a tangible employment action and decide the case on the affirmative defense—it is simply not available. Determination whether the complaining employee has suffered a tangible employment action is the indispensable first step in every supervisor sexual harassment/vicarious liability case under Title VII, even if subsequent stops on the road map may be skipped.

> FN6. *See Ellerth,* 524 U.S. at 761–62, 118 S.Ct. 2257, 141 L.Ed.2d 633 (tangible employment actions "require[ ] an official act of the enterprise, a company act," such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits")

*Casiano,* 213 F.3d at 283–84 (several internal footnotes omitted).

Based on the holdings in *Casiano,* this Court must apply the following sequence

of tests in analyzing Plaintiff's sexual harassment claims:

1) Determine whether Plaintiff was subject to an adverse employment action, which includes hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.

2) If Plaintiff was subjected to an adverse employment action, then the claims are classified as *quid pro quo* claims, and the Court must determine whether a causal connection existed between the adverse employment action and the alleged sexual harassment. If a causal connection is found, then the employer is vicariously liable for sexual harassment by Plaintiff's supervisor, if such harassment is proven. The employer is not entitled to assert any affirmative defenses to vicarious liability under this scenario.

3) If Plaintiff was not subjected to an adverse employment action, then the claims are classified as hostile work environment claims. Under this scenario, the first inquiry is whether the alleged harassment constitutes "severe or pervasive sexual harassment." If it does not, then the employer cannot be held vicariously liable for the alleged sexual harassment. If the alleged harassment does constitute "severe or pervasive sexual harassment," then the employer must be held vicariously liable unless *both* of the following are proven:

a) the employer exercised reasonable care to prevent and promptly correct the sexual harassment; *and*

b) the Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer, or failed to otherwise reasonably avoid the harm.

   ■ In the subject cause, Plaintiff suffered no adverse employment action as a result of the alleged sexual harassment. Although her employment with Gannett was ultimately terminated by Gannett, that action was not directly related to the sexual harassment allegedly suffered by Plaintiff at the hands of her supervisor, Dale Martin. The Court therefore finds that Plaintiff's sexual harassment claims must proceed under the analysis of hostile work environment.

   ■ Without the need for detailed analysis, the Court finds that the sexual harassment alleged by Plaintiff constitutes "severe or pervasive sexual harassment." As such, Gannett must be held vicariously liable for a finding of sexual harassment unless it can prove *both* that it exercised reasonable care to prevent or correct the alleged harassment, *and* that Plaintiff failed to take advantage of any avenues provided by Gannett to prevent or stop the harassment. Failure of either of these elements results in the imposition of vicarious liability on Gannett, if sexual harassment is proven at trial.

   The Court finds that the issue of whether Gannett exercised reasonable care to prevent or correct the alleged harassment represents a genuine issue of material fact that must be decided at the trial of this cause. Prior to the alleged sexual harassment of Plaintiff, at least two other female employees of Gannett informed management that Dale Martin allegedly sexually harassed them. *See supra*, section I. of this Opinion and Order. Although Gannett confronted Martin regarding these allegations, his deviant ways allegedly continued through Plaintiff's employment tenure with Gannett. *See, Id.* Under this fact scenario, the Court is compelled to submit to the jury the issue of whether Gannett exercised reasonable care to prevent Martin's allegedly harassing conduct. Therefore, the Motion for Summary Judgment on Plain-

tiff's gender discrimination claim must be denied.[4]

## C. State Law Claims

Plaintiff's state law causes of action for assault and battery, infliction of emotional distress, and negligence are all based on actions relating to Plaintiff's sexual harassment claims. Therefore, the state law claims accrued no later than July 30, 1999, the date that Martin was terminated from his employment position with Gannett. Gannett contends that the state law causes of action are barred by the applicable statutes of limitations.

The two statutes of limitations that apply to Plaintiff's state law causes of action are § 15–1–35 and § 15–1–49 of the Mississippi Code. Section 15–1–35 states:

> All actions for assault, assault and battery, maiming, false imprisonment, malicious arrest, or menace, and all actions for slanderous words concerning the person or title, for failure to employ, and for libels, shall be commenced within one (1) year next after the cause of such action accrued, and not after.

On its face, § 15–1–35 applies a one year limitations period to Plaintiff's claim for assault and battery. Also, case law interpretations of this code section apply the one year limitation period to Plaintiff's claim for *intentional* infliction of emotional distress. *Air Comfort Sys., Inc. v. Honeywell, Inc.*, 760 So.2d 43, 47 (Miss.Ct.App. 2000).

Section 15–1–49(1) states "[a]ll actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of action accrued, and not after." As the Mississippi Code includes no specific statute of limitations for claims of negligence,

Plaintiff's negligence claims are governed by the three year limitation period set forth in § 15–1–49. This finding includes Plaintiff's claim for *negligent* infliction of emotional distress, *Air Comfort Sys., Inc.*, 760 So.2d at 47, as well as the remainder of Plaintiff's negligence claims.

As stated above, Plaintiff's state law claims accrued no later than July 30, 1999. Under both Rule 3 of the Federal Rules of Civil Procedure and Rule 3(a) of the Mississippi Rules of Civil Procedure, "[a] civil action is commenced by the filing of a complaint with the court." Therefore, Plaintiff's claims for negligence, including her claim for negligent infliction of emotional distress, must have been filed with the Court on or before July 30, 2002, in order to comply with the limitation period set forth in § 15–1–49. To comply with the limitation period enunciated in § 15–1–35, Plaintiff's claims for assault and battery and for intentional infliction of emotional distress must have been filed on or before July 30, 2000. Plaintiff's Complaint was filed with this Court on August 13, 2002, after the expiration of both applicable statutes of limitations. Therefore, unless the statutes of limitations were tolled in some manner, all of Plaintiff's state law claims must be dismissed as time barred.

Plaintiff argues that her state law claims are not time barred because " § 15–1–59 of the Mississippi Code Annotated tolls the running of the statutes of limitation when a person is suffering from 'unsoundness of mind.'" Plaintiff's Memorandum in Support of Her Response to Motion for Summary Judgment, p. 9. That is Plaintiff contends that because she was suffering "unsoundness of mind" resulting from the actions of Gannett, the statute of

---

**4.** Because the Court finds that a genuine issue of material fact exists as to whether Gannett exercised reasonable care to prevent or correct the alleged sexual harassment of Plaintiff, the Court need not address the issue of whether Plaintiff failed to take advantage of any avenues provided by Gannett to prevent or stop the harassment.

limitations on her state law claims was tolled.

■ In relevant part, § 15–1–59 states: If any person entitled to bring any of the personal actions mentioned shall, at the time at which the cause of action accrued, be under the disability of infancy or unsoundness of mind, he may bring the actions within the times in this chapter respectively limited, after his disability shall be removed as provided by law.

Section 15–1–59 is often referred to as the "savings statute." In *Brumfield v. Lowe*, 744 So.2d 383 (Miss.1999), the Mississippi Court of Appeals analyzed the meaning of the savings statute. The *Brumfield* court held that:

"The term 'unsound mind,' when used in any statute in reference to persons, shall include idiots, lunatics, and persons *non compos mentis*." Miss.Code Ann. 1–3–57 (Rev.1998). The Mississippi Supreme Court addressed the law regarding mental competency and statutes of limitation in *Shippers Express v. Chapman*, 364 So.2d 1097, 1100 (Miss.1978):

[T]he test as to whether the claimant is so "mentally incompetent" as to toll the running of the statute of limitations, is this: Is his mind so unsound, or is he so weak in mind, or so imbecile, no matter from what cause, that he cannot manage the ordinary affairs of life? "The purpose of the savings statute is to protect the legal rights of those who are unable to assert their own rights due to disability." *Rockwell v. Preferred Risk Mut. Ins. Co.*, 710 So.2d 388, 391 (Miss.1998).

*Id.* at 387. Application of the savings clause does not require a legal adjudication of unsoundness of mind. *Rockwell v. Preferred Risk Mut. Ins. Co.*, 710 So.2d 388, 390 (Miss.1998). However, absent a legal adjudication of unsoundness of mind, a party must "present alternative evidence to prove that he lacked the requisite understanding for handling his legal affairs." *Id.* at 391.

■ In support of her contention that the statute of limitations on her state law claims should be tolled, Plaintiff argues as follows:

Hampton testified in her deposition that she was diagnosed with schizophrenia and that she was placed on disability leave by her doctor. *Hampton Deposition 185–204*. She was further taken off of temporary disability in January of 2000 and ultimately placed on permanent disability with Social Security. The disability was based upon her suffering a medical disorder which she attributes to being exacerbated by the harassment suffered from the Defendants.

\* \* \* \* \* \*

Hampton argues in support of her state law claims that due to her severe disability, one which was recognized by Gannett until her failure to return in 2000 and one recognized by the Social Security Administration, she was not in a position to bring her state tort claims until such time that she was able to properly assert and prosecute such. This issue is a question of fact.

Hampton points to the fact that Gannett recognized her disability under a short term disability program which ceased in January of 2000 which would place her within her three year statute of limitation period for the negligence claims.

Plaintiff's Memorandum in Support of Her Response to Motion for Summary Judgment, p. 9.

■ Based on the binding case law presented above, the Court must consider whether Plaintiff was mentally incapacitated to the extent that she could not "man-

age the ordinary affairs of life." *See,* *Brumfield,* 744 So.2d at 387. The Court finds that at this phase of the litigation, Plaintiff has presented sufficient evidence on the issue of her unsoundness of mind to shift the burden of proof to Gannett. Citing pages eleven, sixteen, seventeen and one-hundred and ninety-six of Plaintiff's deposition, Gannett argues that Plaintiff was able to handle the day to day affairs of her life because she was the sole supporter of her family.[5] A review of these pages of Plaintiff's deposition does *not* indicate that Plaintiff properly administered the day to day affairs of her family. In fact, the testimony tends to indicate that Plaintiff was *not* in effective control of the day to day affairs of her family. *See,* Defendants' Rebuttal in Support of Motion for Summary Judgment, Exhibit "C," Plaintiff's deposition, p. 196 (stating that "my son had burned my daughter with the iron on her arm and he had cut her hair.").

Gannett further argues that Plaintiff was able to manage the ordinary affairs of her life because "after the EEOC completed its investigation regarding Plaintiff's allegations, Plaintiff became actively involved in managing her potential claims and hired an attorney to protect her interests." Defendants' Rebuttal Memorandum in Support of Motion for Summary Judgment, p. 10. In support of this argument, Gannett cites a series of letters exchanged between Gannett, the EEOC and counsel for Plaintiff.[6] However, none of the letters indicates Plaintiff's level of participation in either the EEOC proceedings, or the subject cause of action. Accordingly, the Court cannot rely on this evidence to support a finding that the tolling provisions of § 15–1–59 are inapplicable in this case.

For these reasons, Defendants' Motion for Summary Judgment on Plaintiff's state law negligence claims must be denied.[7] The negligence claims carried three year limitation periods, and Plaintiff presented sufficient proof regarding the tolling of the statute of limitations to create a genuine issue of material fact as to whether the claims were timely filed.

The state law claims for assault and battery, and for intentional infliction of emotional distress both carry one year limitation periods. Plaintiff tacitly admitted that if the tolling provisions of § 15–1–59 apply, then the tolling period ended in January of 2000. *See,* Plaintiff's Memorandum in Support of Her Response to Motion for Summary Judgment, p. 9 (stating that "Hampton points to the fact that Gannett recognized her disability under a short term disability program which ceased in January of 2000 which would place her within her three year statute of limitation period for the negligence claims."). Therefore, for Plaintiff's claims for assault and battery and for intentional infliction of emotional distress to survive summary judgment, they must have been filed in January 2001 or before. They were not. As a result, Defendants' Motion for Summary Judgment on Plaintiff's claims for assault and battery and for intentional infliction of emotional distress must be granted.

## IV. CONCLUSION

For all of the reasons set forth above, the Motion of Gannett for Summary Judg-

---

5. These pages of Plaintiff's deposition are attached to Defendants' Rebuttal in Support of Motion for Summary Judgment as Exhibit "C."

6. The letters are attached to Defendants' Rebuttal in Support of Motion for Summary Judgment as Exhibits "D" through "G."

7. This finding *does not* preclude Gannett from arguing the statute of limitations issue regarding Plaintiff's state law negligence claims at trial. The Court merely finds that Plaintiff has overcome her burden of proof on this issue at the summary judgment phase of the litigation.

ment should be granted in part and denied in part as follows:

IT IS THEREFORE ORDERED that Motion of the Defendants [27–1] is hereby granted in part, to the extent that the following claims are hereby dismissed with prejudice:

1) Plaintiff's claim for religious discrimination;

2) Plaintiff's claim for assault and battery; and

3) Plaintiff's claim for intentional infliction of emotional distress.

IT IS FURTHER ORDERED that Motion of the Defendants [27–1] is hereby denied in part, to the extent that the following claims are preserved for a decision on the merits at trial:

1) Plaintiff's claim for gender discrimination, i.e., her sexual harassment claim;

2) Plaintiff's claim for negligent infliction of emotional distress; and

3) Plaintiff's remaining claims based on negligence.