# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-02045-COA

PATRICIA VICK                                                                    APPELLANT

v.

BRANDON HMA, LLC D/B/A CROSSGATES                          APPELLEES
RIVER OAKS HOSPITAL A/K/A RANKIN
MEDICAL CENTER AND THE ESTATE OF
ROBERT TIEL, M.D.

| | |
|---|---|
| DATE OF JUDGMENT: | 10/31/2013 |
| TRIAL JUDGE: | HON. JOHN HUEY EMFINGER |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | EDUARDO ALBERTO FLECHAS |
| | RONALD EARL STUTZMAN JR. |
| ATTORNEY FOR APPELLEES: | MARK P. CARAWAY |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| TRIAL COURT DISPOSITION: | GRANTED SUMMARY JUDGMENT IN FAVOR OF APPELLEES |
| DISPOSITION: | AFFIRMED – 06/09/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., ISHEE AND CARLTON, JJ.**

**IRVING, P.J., FOR THE COURT:**

¶1.	The Circuit Court of Rankin County granted summary judgment in favor of the appellees in Patricia Vick's medical-negligence action against them. Patricia now appeals, alleging that she has been of unsound mind since she was a child and that the circuit court erred in finding the evidence insufficient to establish that her mental condition tolled the statute of limitations.

¶2.	Finding no error, we affirm.

FACTS

¶3. On July 29, 2009, Dr. Robert Tiel, a neurosurgeon formerly employed by Brandon HMA Inc. d/b/a Crossgates River Oaks Hospital, performed surgery on fifty-year-old Patricia. Dr. Tiel died shortly thereafter. On November 14, 2011, Patricia filed a complaint against Dr. Tiel's estate and Crossgates, alleging negligence on the part of Dr. Tiel.

¶4. After Patricia filed her complaint, the parties conducted limited discovery. During a deposition taken on July 1, 2013, Patricia stated that prior to the surgery, Dr. Tiel assessed her condition and described the surgery to her. She confirmed that she understood the information that Dr. Tiel related to her during the assessment. Patricia also stated that on or about August 3, 2009, she went to St. Dominic's Memorial Hospital in Jackson, Mississippi, complaining of a sore throat, hoarseness, and difficulty swallowing. She was admitted and diagnosed with right-vocal-cord paralysis, and she was discharged on August 12, 2009. Patricia acknowledged that she was competent and capable of making healthcare decisions without assistance during her stay at St. Dominic's.

¶5. During the deposition, Patricia also revealed that she had been married, that she regularly attended Sunday-school services at church, and that, prior to the surgery, she sang in the church choir. Patricia further revealed that she had attended special-education classes, had a ninth-grade education, and had voluntarily quit school after becoming pregnant. Additionally, Patricia revealed that she had worked at a nursing home for ten continuous years as a certified nursing assistant (CNA).

¶6.   In their motion for summary judgment, the estate and Crossgates[1] argued that the statute of limitations had run on Patricia's claims before she filed her complaint.  More specifically, they argued that the statute of limitations ran on September 29, 2011, which was two years and sixty days[2] from the date of the surgery, or, at the latest, on October 12, 2011, which was two years and sixty days following Patricia's release from St. Dominic's.[3]

¶7.   In response, Patricia argued that the statute of limitations did not start to run until November 26, 2009, which was the date her niece, Sylvia Buck, informed her that a severe choking incident that Patricia had suffered was not a normal side effect of the surgery. Sylvia suggested that Patricia consult an attorney.  Alternatively, Patricia argued that she has been of unsound mind since she was a child, and, consequently, the provisions of Mississippi Code Annotated section 15-1-59 (Rev. 2012) tolled the statute of limitations.

¶8.   In support of her argument that she is of unsound mind, Patricia submitted four affidavits: one from herself, and one each from Lashane Buck, her daughter-in-law; Sylvia;

---

[1] Crossgates joined the estate's motion for summary judgment.

[2] Mississippi Code Annotated section 15-1-36(2) and (15) (Rev. 2012) provides that a medical-negligence action against a licensed physician must be brought within two years unless "notice is served within sixty (60) days prior to the expiration of the applicable statute of limitations[.]"  If notice is served within sixty days prior to the expiration, then "the time for the commencement of the action shall be extended sixty (60) days from the service of the notice[.]"  Miss. Code Ann. § 15-1-36(15).

[3] We note that two years and sixty days from the date of the surgery would be September 27, 2011, instead of September 29, 2011, and that two years and sixty days from the date of Patricia's discharge from St. Dominic's would be October 11, 2011, instead of October 12, 2011, as argued by the appellees.

3

and Priscilla Buck, her daughter. In her affidavit, Patricia stated that (1) she has a ninth-grade education and had attended special-education classes; (2) she relies on her family for transportation; and (3) she does not handle her own finances. Lashane stated in her affidavit that she manages Patricia's finances, and Sylvia stated that in November 2009, she informed Patricia that she should seek legal counsel to discuss possible claims against Dr. Tiel. Priscilla stated that she assists Patricia with her day-to-day affairs, specifically transportation and the management of her finances.

¶9. The circuit court granted the motion for summary judgment and dismissed Patricia's claims with prejudice. In the final judgment, the circuit court found that "the statute of limitations had run prior to the filing of the [c]omplaint initiating this action, and . . . there was insufficient proof that the statute of limitations should be tolled because of unsoundness of mind of . . . [Patricia]." It is from this judgment that Patricia appeals.

DISCUSSION

¶10. In summary-judgment matters, our standard of review is well settled: "this Court applies a de novo standard of review." *Morton v. City of Shelby*, 984 So. 2d 323, 329 (¶10) (Miss. Ct. App. 2007).

> When considering a motion for summary judgment, the deciding court must view all evidence in a light most favorable to the non-moving party. Only when the moving party has met its burden by demonstrating that there are no genuine issues of material fact in existence should summary judgment be granted.

*Id*. (internal citations omitted).

4

¶11. Patricia's sole argument on appeal is that the statute of limitations was tolled by the provisions of section 15-1-59. Patricia argues that her disability is evidenced by the fact that she does not handle her own finances and the fact that she relies on her family members for transportation. In response, the estate and Crossgates[4] argue that "the record clearly demonstrates that [Patricia] was not so unsound [of,] or weak in[,] mind that she could not manage the ordinary affairs of life, which is the standard for application of [section 15-1-59]."

¶12. Section 15-1-59 provides the following exception to the two-year statute of limitations:

> If any person entitled to bring any of the personal actions mentioned shall, at the time at which the cause of action accrued, be under the disability of infancy or unsoundness of mind, he may bring the actions within the times in this chapter respectively limited, after his disability shall be removed as provided by law.

¶13. In *Brumfield v. Lowe*, 744 So. 2d 383, 387 (¶20) (Miss. Ct. App. 1999) (internal quotation marks omitted) (citing *Shippers Express v. Chapman*, 364 So. 2d 1097, 1100 (Miss. 1978)), this Court stated:

> The test as to whether the claimant is so mentally incompetent as to toll the running of the statute of limitations, is this: Is his mind so unsound, or is he so weak in mind, or so imbecile, no matter from what cause, that he cannot manage the ordinary affairs of life?

---

[4] The estate submitted a brief, and Crossgates joined the estate's brief.

¶14.     Patricia cites *Hampton v. Gannett Co.*, 296 F. Supp. 2d 716 (S.D. Miss. 2003), as support for her argument that she is of unsound mind.  In *Gannett*, the United States District Court for the Southern District of Mississippi was asked to decide whether section 15-1-59 had tolled the statute of limitations on the plaintiff's state-law claims against her past employer.  *Gannett*, 296 F. Supp. 2d at 723.  The plaintiff argued that at the time of the accrual of her claims, "she was suffering 'unsoundness of mind' resulting from the actions of [her past employer; so] the statute of limitations on her state[-]law claims [had been] tolled."  *Id.* at 723-24.  The *Gannett* court noted that "absent a legal adjudication of unsoundness of mind, a party must 'present alternative evidence to prove that [s]he lacked the requisite understanding for handling h[er] legal affairs,'" thereby shifting the burden of proof to the defendant to prove that the plaintiff did not suffer from a mental disability.  *Id.* at 724-25 (citation omitted).

¶15.     In support of her argument that section 15-1-59 had tolled the statute of limitations, the plaintiff in *Gannett* asserted

> that she was diagnosed with schizophrenia and that she was placed on disability leave by her doctor. . . .  She was . . . taken off of temporary disability [through her employment] and ultimately placed on permanent disability with Social Security.  [According to the plaintiff, t]he disability was based upon her suffering [from] a medical disorder[,] which she [argued was] exacerbated by the harassment suffered from [her past employer].

*Gannett*, 296 F. Supp. 2d at 724.  Thus, the plaintiff argued that both her past employer and the Social Security Administration had recognized her disability.  *Id.*  In turn, the defendants argued that the plaintiff was able to handle the ordinary affairs of her life "because she was

the sole supporter of her family." *Id.* at 725. The *Gannett* court found that the "[p]laintiff ha[d] presented sufficient evidence on the issue of her unsoundness of mind to shift the burden of proof to [the defendant]." *Id*. The court also found that the defendant had provided insufficient evidence to rebut the plaintiff's claim that section 15-1-59 had tolled the statute of limitations. *Gannett*, 296 F. Supp. 2d at 725.

¶16.    Our case is easily distinguishable. Here, unlike in *Gannett*, there is no evidence that Patricia suffers from any kind of mental illness or that she has been found to be permanently disabled because of a mental illness. Additionally, there is no evidence that Patricia is incapable of handling her day-to-day affairs. Although Patricia submits that she has been of unsound mind since early childhood, the evidence belies this argument, as she admits that since then, she has: (1) actively participated in church activities, (2) worked as a CNA, (3) been married, (4) made important healthcare decisions, and (5) actively and coherently participated in the subject litigation.

¶17.    Section 15-1-59 allows potential litigants to pursue their legal claims after the mental disability is removed, and Patricia insists that this Court should focus on her present mental condition. If we accept Patricia's argument that she is currently of unsound mind, and that she has been of unsound mind since long before the surgery, then it necessarily follows that she was not competent to initiate the action from which this appeal emanates, as she has presented no evidence to establish that the alleged disability has been removed. However, as we explain in the following paragraph, we find no merit in Patricia's arguments.

7

¶18. Although Patricia may rely on her family for the management of her finances and for transportation, the evidence in no way establishes that her purported inability to perform those tasks is the result of her being "so unsound, or . . . so weak in mind, or so imbecile, no matter from what cause, that [s]he cannot manage the ordinary affairs of [her] life." *Brumfield*, 744 So. 2d at 387 (¶20). Moreover, the evidence reveals that Patricia was capable of managing the day-to-day affairs of her life at and around the time that her claims accrued in this case, as the evidence establishes that Patricia was mentally competent when Dr. Tiel performed the surgery and when she received treatment at St. Dominic's. Therefore, the circuit court did not err in finding that Patricia provided insufficient proof that her mental condition operated to toll the statute of limitations. Thus, the remaining question is, when did the statute of limitation run?

¶19. As noted, despite Patricia's contention that she was of unsound mind at the time of her surgery and during her stay at St. Dominic's, she also argued in the circuit court that the statute of limitations did not commence until November 26, 2009, and, therefore, her lawsuit, which was filed on November 14, 2011, was timely. Mississippi Code Annotated section 15-1-49(2) (Rev. 2012) provides that, as to latent injuries, the statute of limitations begins to run when the injury is discovered or by reasonable diligence should have been discovered. From the record before us, it is clear that Patricia knew or, by the exercise of reasonable diligence, should have known when she went to St. Dominic's in August 2009, following her surgery the previous month, that there was a problem with the surgery, if

8

indeed there was. Moreover, in her brief to this Court, Patricia has not presented any argument as to when the statute of limitations began to run. Therefore, we find that the circuit court did not err in granting summary judgment in favor of Crossgates and the estate.

¶20. **THE JUDGMENT OF THE CIRCUIT COURT OF RANKIN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. JAMES, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.**