IRVING, J.,
for the Court:
¶ 1. Patricia Smith retained Rogen Chhabra and his law firm, Tabor, Chhabra and Gibbs, P.A. (TCG), to represent her in her workers’ compensation claim. Smith later terminated Chhabra as her counsel and filed suit against both Chhabra and his law firm, alleging fraud, breach of contract, and legal malpractice. Chhabra moved for summary judgment, which the Hinds County Circuit Court granted on October 9, 2009. Feeling aggrieved, Smith appeals and asserts that summary judgment was improper as there is evidence that Chhabra committed fraud and legal malpractice, and his firm breached its contract with Smith.
¶ 2. Finding no reversible error, we affirm.
FACTS
¶ 3. Smith suffered a work-related injury on June 14, 2007.[1] As a result, she received workers’ compensation payments, but for reasons that are not clear in the record, those payments were terminated. On December 17, 2007, Smith retained Chhabra and TCG to represent her in her workers’ compensation claim. She signed a contingency-fee agreement whereby TCG would receive twenty-five percent of any recovery. The agreement also authorized TCG to receive any recovered workers’ compensation payments, deposit them *879 into the firm’s trust account, and disburse Smith’s portion (less the twenty-five percent contingency fee) to her.[2]
¶ 4. Chhabra determined that Smith was entitled to additional workers’ compensation benefits and filed, on her behalf, a petition to controvert. On April 10, 2008, the administrative judge (AJ) entered an order adjusting Smith’s average weekly wage, directing the employer/carrier to pay the difference, and assessing a ten-percent penalty on past-due compensation payments.
¶ 5. Following the order, TCG began receiving checks directly from the workers’ compensation carrier for past-due disability benefits. In accordance with the terms of the agreement Smith signed with TCG, the funds were deposited in the firm’s trust account and Smith’s portion, less the twenty-five percent contingency fee, was remitted to her.
¶ 6. On June 23, 2008, Chhabra wrote a letter to the carrier’s attorney following up on unpaid temporary total disability and permanent partial disability payments. Chhabra also filed a motion to compel payment of temporary total disability and permanent partial disability shortages.[3]
¶ 7. On June 25, 2008, Smith wrote Chhabra a letter terminating him as her counsel. In the letter, Smith accused Chhabra of cashing her disability checks without her consent and stealing the proceeds. Chhabra filed a motion to withdraw as counsel and requested a $5,310.02 lien for legal services rendered. On August 18, 2008, the AJ permitted Chhabra to withdraw as counsel and acknowledged that his lien request would be addressed if additional benefits were paid. Additionally, the AJ found that Chhabra was entitled to twenty-five percent of the remaining unpaid benefits from the April 10, 2008, order.
¶ 8. Smith continued to pursue her claim pro se. She argued that she was entitled to a higher average weekly wage and that the April 10, 2008, order should be modified. Additionally, Smith contended that she was permanently and totally disabled as a result of her work-related injury. On June 30, 2009, the AJ issued an order affirming the previously adjudicated average weekly wage and denying Smith’s claim for permanent disability benefits. Smith, again acting pro se, appealed the AJ’s order to the full Commission. On February 18, 2010, the full Commission entered an order affirming the award of temporary total disability benefits and reversing the denial of permanent disability benefits.[4]
*880 ¶ 9. Following the full Commission’s order, the employer/carrier filed a motion asking for guidance regarding the payment of benefits in light of Chhabra’s services lien and Smith’s opposition to the lien. On May 17, 2010, the AJ entered an order enforcing the services lien and finding that, given the contingency-fee agreement signed by Smith, Chhabra was entitled to twenty-five percent of the full Commission’s benefit award.
¶ 10. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES
¶ 11. A Mississippi appellate court reviews a trial court’s decision to grant or deny a motion for summary judgment de novo. O.W.O. Inv., Inc. v. Stone Inv. Co., 32 So.3d 439, 446 (¶ 18) (Miss.2010) (citing Kuiper v. Tarnabine, 20 So.3d 658, 660-61 (¶ 7) (Miss.2009)). A trial court must grant a motion for summary judgment “if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” M.R.C.P. 56(c). In determining whether a trial court properly granted summary judgment, we view the facts in the light most favorable to the nonmovant. Fletcher v. Lyles, 999 So.2d 1271, 1276 (¶ 20) (Miss.2009). “Summary judgment is appropriate if the nonmoving party has not made a sufficient showing to ‘establish the existence of an element essential to that party’s case, and on which that party will bear the burden of proof at trial.’ ” O.W.O. Inv., 32 So.3d at 446 (¶ 18) (quoting Kuiper, 20 So.3d at 661 (¶ 7)).
¶ 12. Smith alleges that Chhabra committed fraud and legal malpractice. Additionally, Smith alleges that TCG breached its contract with Smith. Smith takes issue with the handling of her disability payments by Chhabra. She alleges that Chhabra committed fraud when he signed and deposited the checks without her permission.
¶ 13. A successful fraud claim requires that the plaintiff prove the following elements by clear and convincing evidence:
(1) a representation, (2) its falsity, (3) its materiality, (4) the speaker’s knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer’s ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury.
O.W.O. Inv., 32 So.3d at 446 (¶ 20) (quoting Mabus v. St. James Episcopal Church, 884 So.2d 747, 762 (1132) (Miss.2004)).
¶ 14. Following the order adjusting Smith’s disability benefits, the carrier began submitting checks directly to TCG. Smith’s contract with TCG expressly authorized it to receive disability payments on her behalf, deposit the funds in the firm’s trust account, and remit Smith’s portion, less a twenty-five percent contingency fee. There is no evidence in the record that the firm acted outside of the express authority granted under the contract or that Chhabra misappropriated Smith’s disability payments. While there is no evidence of fraud or misappropriation, TCG did fail to provide Smith with copies of the checks received from the *881 carrier. We feel compelled to caution lawyers that failing to provide clients with copies of checks received on a client’s behalf does not constitute best practice.
¶ 15. Smith also alleges that TCG breached its contract with Smith. “[I]n [a] suit for breach of contract, the plaintiff has the burden of proving by a preponderance of the evidence the existence of a valid and binding contract, that the defendant has broken or breached it, and that the plaintiff has suffered monetary damages as a result.” Garner v. Hickman, 733 So.2d 191, 195 (¶ 15) (Miss.1999) (citing Warwick v. Matheney, 603 So.2d 330, 336 (Miss.1992)).
¶ 16. There is no evidence in the record that TCG breached its contract with Smith. The contract expressly authorized TCG to receive any workers’ compensation benefits recovered through its efforts, deduct its fee, and remit the remainder to Smith. The firm’s actions conformed completely with what Smith contractually authorized it to do.
¶ 17. Furthermore, while the contract does not describe the specific services that Chhabra agreed to render in pursuing Smith’s workers’ compensation claim, the record reveals that Chhabra filed a petition to controvert, a motion to correct temporary total disability payments, a pre-hearing statement, and a motion to compel payment of unpaid benefits. Based on the record, Chhabra appropriately pursued Smith’s workers’ compensation claim. Therefore, Smith’s breach-of-contract claim is without merit.
 ¶ 18. Finally, Smith claims that Chhabra committed malpractice when he allegedly closed her claim without her consent. To prevail in a legal-malpractice claim, the plaintiff must prove, by a preponderance of the evidence, the following: “(1) the existence of an attorney-client relationship, (2) negligence on the part of the lawyer in handling his client’s affairs entrusted to him, and (3) proximate cause of the injury.” Byrd v. Bowie, 933 So.2d 899, 904 (¶ 15) (Miss.2006) (citing Wilbourn v. Stennett, Wilkinson & Ward, 687 So.2d 1205, 1215 (Miss.1996)). While an attorney-client relationship existed between Chhabra and Smith, there is no evidence in the record that Chhabra committed malpractice in the course of his representation of Smith. Smith’s allegations that Chhabra either closed or settled her workers’ compensation claim without her consent are not supported by the record. After Chhabra withdrew as counsel of record, Smith continued to pursue her claim pro se. However, Chhabra had no further involvement in the claim and did not participate in the resolution of Smith’s case. Smith has failed to prove that Chhabra acted negligently in handling her claim; therefore, her malpractice claim must fail.
¶ 19. Based on our review of the record, Smith has failed to prove the essential elements of her claims against Chhabra and TCG; therefore, the circuit court did not err in granting the appellees’ motion for summary judgment.
¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ„ CONCUR.

. Smith fractured her toe when a steel die fell on her foot.

.Smith signed the firm's "Contract and Authority to Represent,” which provided in pertinent part:
I agree to pay unto Tabor, Chhabra & Gibbs, P.A., the sum of twenty-five percent (25%) of all monies recovered in this matter prior to an appeal.... I hereby set over and assign to Tabor, Chhabra & Gibbs, P.A., an undivided interest in and to my said claim in those said percentages of recovery heretofore stated above as consideration.
I instruct and authorize Tabor, Chhabra & Gibbs, P.A. to request that all drafts and moneys affected by this paragraph be sent to them and deposited in their trust account with my portion being disbursed to me in a reasonable amount of time.

. The record is not clear as to what services Chhabra agreed to render in the context of Smith’s workers’ compensation claim. However, based on the pleadings, Chhabra clearly made efforts to correct the average weekly wage used to calculate Smith’s temporary total disability benefits and collect unpaid amounts of permanent partial disability benefits and temporary total disability benefits.

. The full Commission took issue with the AJ's favoring the findings of the second orthopedic surgeon who concluded that Smith had no ratable impairment to her foot. The first orthopedic surgeon to examine Smith assessed a two percent permanent disability rating to Smith's foot, and the Commission saw *880 no reason to favor the second surgeon’s opinion regarding permanent impairment over the first. As such, the Commission awarded permanent partial disability benefits consistent with a two percent impairment to the foot.