MODIFIED OPINION ON MOTION FOR REHEARING
BARNES, J.,
for the Court:
¶ 1. This case is before us on a motion for rehearing; the motion is denied, and the original opinion is withdrawn and substituted with this opinion.
¶2. Ethel Buckley appeals the circuit court’s grant of summary judgment in favor of Singing River Hospital (Singing River). Finding no error, we affirm.
SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 3. On December 3, 2003, Singing River maintenance employees were stripping and waxing a floor in front of a service elevator. The elevator had been locked while they performed the task. When two other employees asked to use the elevator, the maintenance workers removed the warning sign and barricade and unlocked the service elevator for their use. However, the workers failed to re-engage the lock on the elevator after its temporary use, and minutes later, Buckley exited the elevator and fell.[1] On August 19, 2004, Buckley required fusion surgery to her *368 back to repair a “L4-L5 herniation,” and she never returned to work.
¶ 4. On June 28, 2005, Buckley filed a complaint against Singing River, alleging that she sustained a “severe and permanent physical injury” as a the result of the hospital’s negligence. During discovery, Singing River sent Buckley interrogatories; the third question requested the identity of any potential expert witnesses. When Buckley responded to the interrogatories on April 9, 2007, she simply stated in response to that question that she anticipated calling her “treating physicians.”[2] She also stated that she would supplement the response “if necessary.” However, she never submitted a supplemental answer to the interrogatory question.
¶ 5. Over two years later, on November 23, 2009, Buckley’s counsel sent a letter to opposing counsel, stating:
I am writing to follow up on our previous discussions regarding plaintiffs experts. In addition to calling Mrs. Buckley’s treating physicians, who will testify as to the diagnosis, prognosis, and causation of her injuries, we intend to call Dr. Robert Hebert, an economist, and Catherine Brock, a life care planner.
On January 28, 2010, Buckley sent Singing River a notice of deposition for Dr. Edward Schnitzer, a physician who had been treating Buckley for pain management since August 26, 2009. However, the deposition, which was scheduled for March 11, 2010, was later cancelled. The deposition was conducted one year later in March 2011.
¶ 6. Although the trial had been scheduled for October 4, 2010, both parties requested a continuance in order to complete discovery. On October 5, 2010, the circuit court entered a scheduling order, which had been drafted by Buckley’s counsel. The order required Buckley to designate any expert witnesses by November 1, 2010.[3] Singing River had already filed a “Designation of Expert Witnesses” with the court on January 13, 2010, which contained its expert witness’s resume and qualifications. Singing River also submitted an updated designation of expert witnesses on December 15, 2010, to comply with the latest scheduling order. Buckley, however, never filed a designation of expert witnesses with the circuit court.
¶ 7. After Dr. Schnitzer’s deposition in March 2011, Singing River filed a motion for summary judgment and a motion to strike the opinion testimony of Dr. Schnit-zer on April 1, 2011, citing Buckley’s failure to designate Dr. Schnitzer as an expert witness. After an April 14, 2011 hearing on the pretrial motions, the circuit court granted summary judgment for Singing River, dismissing the action with prejudice.[4]
¶ 8. Buckley filed a motion to alter the judgment, which the court denied. On appeal, we find no error and affirm the circuit court’s grant of Singing River’s motion for summary judgment.
ANALYSIS
¶ 9. The issue before this Court is whether the circuit court erred in granting Singing River’s motion for summary judg *369 ment. A circuit court’s grant of summary judgment is reviewed de novo. Smith v. Chhabra, 54 So.3d 877, 880 (¶ 11) (Miss.Ct. App.2011) (citing O.W.O. Invs., Inc. v. Stone Inv. Co., 82 So.Bd 439, 446 (¶ 18) (Miss.2010)). A motion for summary judgment must be granted “if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” M.R.C.P. 56(c). “[V]iew[ing] the facts in the light most favorable to the nonmovant, ... ‘Num-mary judgment is appropriate if the non-moving party has not made a sufficient showing to establish the existence of an element essential to that party’s case, and on which that party will bear the burden of proof at trial.’ ” Smith, 54 So.3d at 880 (¶ 11) (citations omitted).
I. Buckley’s failure to designate Dr. Schnitzer as an expert witness.
¶ 10. Singing River’s interrogatories to Buckley requested information on “each person” Buckley intended to call as a potential expert witness, including the subject matter of each witness’s anticipated testimony. Buckley responded: “It is anticipated that Plaintiff will call treating physicians to testify as to their diagnosis, prognosis, examination and treatment of her and [their] medical opinions thereof. Plaintiff will supplement, if necessary.” Buckley claims that her initial intent was to disclose the surgeon who performed her back surgery, Dr. Morton Longnecker, as her damages expert. However, Buckley was unable to locate Dr. Longnecker, and she never supplemented her response.
¶ 11. As already noted, Buckley’s counsel sent a letter to opposing counsel on November 23, 2009, stating:
I am writing to follow up on our previous discussions regarding plaintiff’s experts. In addition to calling Mrs. Buckley’s treating physicians, who will testify as to the diagnosis, prognosis, and causation of her injuries, we intend to call Dr. Robert Hebert, an economist, and Catherine Brock, a life care planner.
There was no mention in the letter of Dr. Schnitzer. It was not until January 28, 2010, that Buckley sent Singing River a notice of deposition for Dr. Schnitzer. The notice stated that the deposition would take place on March 11, 2010. The notice did not contain any information as to Dr. Schnitzer’s role as Buckley’s treating physician, nor did it contain any indication as to the basis of his testimony. This deposition was postponed until March 2011.
¶ 12. An agreed scheduling order was entered by the circuit court on October 5, 2010, which stated: “Plaintiff shall designate all her expert witnesses on or before November 1, 2010, providing such information as specified by the Mississippi Rules of Civil Procedure.” The order also stated that discovery was to be completed by March 15, 2011, and set the trial date as April 25, 2011. However, Buckley did not file any designation of expert witnesses with the circuit court.
¶ 13. Dr. Schnitzer was deposed on March 3, 2011, four months after the scheduling order’s deadline for Buckley to designate her expert witnesses had expired. At the deposition, Singing River objected to Dr. Schnitzer’s opinion testimony and to the fact that he had not been designated as an expert. Counsel for Buckley acknowledged Singing River’s continuing objection, stating: “And that’s fine and I completely understand and we will have that stipulation. I remember seeing where — I think we said all treating physicians under the expert category. But *370 that’s okay. We can address that at another time.”
¶ 14. Singing River filed its motion for summary judgment one month later, arguing that Buckley “wholly failed to properly designate an expert witness[,] nor was any information about experts divulged pursuant to the dictates of Rule 26(b)(4).” The circuit court granted the summary judgment motion, agreeing that Buckley failed to designate expert witnesses according to the procedural rules. The court also found that Dr. Schnitzer’s testimony did not meet the requisite standards for expert testimony.
¶ 15. Mississippi Rule of Civil Procedure 26(b)(4) governs expert-witness discovery. Rule 26(b)(4)(A)© reads:
A party may through interrogatories require any other party to identify each person whom the other party expects to . call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.
(Emphasis added). Furthermore, Mississippi Rule of Civil Procedure 26(f)(1) states:
A party is under a duty seasonably to supplement that party’s response with respect to any question directly addressed to (A) the identity and location of persons (i) having knowledge of discoverable matters, or (ii) who may be called as witnesses at the trial, and (B) the identity of each person expected to be called as an expert witness at trial, the subject matter on which the person is expected to testify, and the substance of the testimony.
(Emphasis added). The purpose of this rule is “to avoid unfair surprise and allow the other side enough time to prepare for trial.” Young v. Meacham, 999 So.2d 368, 372 (¶ 16) (Miss.2008) (citation omitted).
¶ 16. Buckley admits she “failed to formally supplement interrogatory responses to specifically name Dr. Schnit-zer.” However, she contends that she “informally” disclosed Dr. Schnitzer as an expert in the interrogatory answers by using the term “treating physicians.” We reject this argument. When Buckley issued her response to the interrogatories in 2007, Dr. Schnitzer was not her “treating physician.” She did not seek treatment from Dr. Schnitzer until 2009. As Singing River observes: “Buckley could not have anticipated naming Dr. Schnitzer as a treating physician expert witness two and a half years prior to her being treated by him.” She also did not provide the substance of the “treating physicians[’]” testimony in her response.
¶ 17. Moreover, Buckley filed a pretrial motion requesting that the court exclude Singing River’s expert’s testimony due to its failure to supplement interrogatories with the expert’s opinion, even though Singing River had filed a designation of the expert witness with the court and had complied with the scheduling order. During the April 14, 2011 hearing on the pretrial motions, the circuit judge noted:
THE COURT: [T]hat Scheduling Order is an Order that’s to be followed by all the attorneys that appear before this Court, number one. As I remember that Scheduling Order, it said everything would be done pursuant to the Mississippi Rules of Civil Procedure. Am I correct?
MR. McCLURKIN [Buckley]: Yes, Your Honor.
MR. MUSSELMAN [Singing River]: And just to make the record clear, Judge, we did not designate them in correspondence. It was actually a
*371 Designation of Experts that we filed with the clerk’s office.
THE COURT: But did you follow the rules with specificity as to an expert witness, 26(b)(4), whatever, as to what their opinions would be? Did you spell all that out with specificity pursuant to the rule?
MR. MUSSELMAN: Yes, Judge.
Thus, Buckley requested the exclusion of the testimony of Singing River’s expert based on its failure to supplement interrogatories. Yet Buckley now argues that Singing River “clearly already knew about Dr. Schnitzer through interrogatory answers, medical records, depositions notices, letters and telephone calls” and claims that her notice of an expert’s testimony through attorney correspondence was sufficient to put Singing River on notice and to allow Dr. Schnitzer to testify. The record does not support this claim.
¶ 18. Dr. Schnitzer was not a treating physician as the time Buckley responded to the interrogatories. He also was not mentioned in the November 2009 letter, although he was a treating physician at that time. The November 2009 correspondence merely reiterates the vague language from the interrogatory response, stating that “Buckley’s treating physicians” would testify to matters regarding “diagnosis, prognosis, and causation of her injuries[.]” There is nothing in the record to suggest Singing River was aware of Dr. Schnitzer’s involvement in the case until February 1, 2010, when his original deposition was noticed. In fact, Singing River claims: “No information contained in the notice revealed that Dr. Schnitzer was a potential expert witness[,] nor was he ever identified as a treating physician of Ms. Buckley until the deposition was in progress.” The deposition was not held until March 3, 2011, one month prior to the scheduled trial date, and it was not until this deposition that Singing River was aware of the content of Dr. Schnitzer’s testimony. Without the supplemental answers to the interrogatory, Singing River had no advance notice of Dr. Schnitzer’s opinion testimony so as to meaningfully cross-examine Dr. Schnitzer at his deposition. Further, as Singing River noted at the summary-judgment hearing, this failure by Buckley to disclose her expert in a timely fashion made it difficult to prepare Singing River’s expert for rebuttal testimony. Counsel for Singing River stated: We never received any opinions from the plaintiff, so we’re kind of in a limbo as to what our expert had to review. We said he would comment on the treatment provided to Ms. Buckley, and his opinions would be based on medical records, as well as any opinions of the plaintiffs experts.
¶ 19. Buckley admits that she never formally designated Dr. Schnitzer as an expert witness as required by the scheduling order. However, Buckley claims that she “reasonably believed they had adequately complied with the Court’s order” and contends that she was “not in violation, only mistaken as to the sufficiency of her answers.” Counsel for Buckley acknowledged at the hearing regarding the motion to alter the judgment: “We failed to formally comply with the Court’s order, the Scheduling Order. And we did informally comply, but we failed to formally comply.” During oral argument before this Court, Buckley’s counsel characterized this violation of the scheduling order as “hypertechnical.”
¶ 20. Buckley clearly committed a discovery violation by not designating Dr. Schnitzer as an expert witness. The question is whether the circuit court’s dismissal with prejudice was, as Buckley argues, “too excessive a sanction for a discovery violation.” In Conklin v. Boyd *372 Gaming Corp-, 75 So.3d 589, 592 (¶8) (Miss.Ct.App.2011), this Court recently stated:
[T]he trial court should only dismiss a cause of action because of discovery violations under the most extreme circumstances. The appellate court looks to the following four factors adopted by the Mississippi Supreme Court to determine if the dismissal of a complaint is the appropriate remedy for discovery violations:
First, dismissal is authorized only when the failure to comply with the court’s order results from wilfulness or bad faith, and not from the inability to comply. Dismissal is proper only in situations where the deterrent value of Rule 37 [of the Mississippi Rules of Civil Procedure] cannot be substantially achieved by the use of less drastic sanctions. Another consideration is whether the other party’s preparation for trial was substantially prejudiced. Finally, dismissal may be inappropriate when neglect is plainly attributable to an attorney rather than a blameless client, or when a party’s simple negligence is grounded in confusion or sincere misunderstanding of the court’s orders.
(Internal citations omitted). “[A]n action may not be dismissed for a discovery violation if a party is simply unable to comply, but ... dismissal may be justified if the violation is the result of ‘willfulness, bad faith, or any fault of the party.’ ” Bowie v. Montfort Jones Mem’l Hosp., 861 So.2d 1037, 1042 (¶ 13) (Miss.2003) (citing Fluor Corp. v. Cook, 551 So.2d 897, 903 (Miss. 1989)). “[R]epeated failures to comply with discovery requests warrant dismissal with prejudice.” Holder v. Orange Grove Med. Specialties, P.A., 54 So.3d 192, 198 (¶ 21) (Miss.2010) (citing Beck v. Sapet, 937 So.2d 945, 950 (¶ 13) (Miss.2006)).
¶ 21. To support her argument against dismissal, Buckley cites Thompson v. Pati-no, 784 So.2d 220 (Miss.2001), a case in which the Mississippi Supreme Court reversed a trial court’s dismissal of the plaintiffs action based on the striking of the plaintiffs discovery supplementation concerning her expert witnesses. The supreme court found that “Thompson pursued her case not perfectly but fairly diligently from filing until dismissal,” and it reversed and remanded, proposing “a less severe sanction.” Id. at 226 (¶¶ 33-34). It concluded:
There is no question Thompson could have done more. She should have made an interim supplementation of her experts’ proposed testimony and then supplemented] again after taking Dr. Go-recki’s deposition. On the other hand, Dr. Gorecki’s testimony was critical, and a lot of the delay can be attributed to problems in scheduling that deposition!.]
Id. at (¶ 32). However, the experts in Thompson had been disclosed in the interrogatories and supplemental responses; the plaintiff merely failed to supplement discovery with the experts’ opinions. Also, the trial date in Thompson had not been set. The supreme court has since cautioned: “That [Thompson ] decision is clearly limited to the facts of that case and does not stand for the proposition that a trial court may never strike an expert affidavit in response to a discovery violation.” BouAe, 861 So.2d at 1041 (¶ 12).
¶ 22. In Bowie, the supreme court upheld a dismissal of a complaint based on the plaintiffs failure to designate an expert witness until after the defendant had filed a motion for summary judgment. The supreme court stated:
The parties and the attorneys knew from the express language of the scheduling order that the therein stated deadlines could “not be extended by *373 agreement of the parties, but only by permission of the Court upon showing of good cause.” Pursuant to the provisions of the scheduling order, the plaintiffs were to designate their expert by December 31, 2000, which came and passed uneventfully without any expert designation by the plaintiffs.
Bowie, 861 So.2d at 1042-43 (¶ 15). Quoting its prior holding in Guaranty National Insurance Co. v. Pittman, 501 So.2d 377, 388-89 (Miss.1987), the supreme court in Bowie noted:
It may be that people will miss fewer trains if they know the engineer will leave without them rather than delay even a few seconds. Although we are not about to inaugurate a policy of entering irrevocable defaults where no answer has been filed by the thirty-first day, we are equally resolved that people know that the duty to answer must be taken seriously. At some point the train must leave.
Bowie, 861 So.2d at 1042 (¶ 14).
¶ 23. Buckley could have supplemented her interrogatories and designated Dr. Schnitzer as an expert witness as early as August 2009, when she began seeking treatment from him. Admittedly, this Court has stated that “a delayed response to interrogatories will not be grounds for exclusion of testimony in cases where a party is not prejudiced by the delay and it does not result in an unfair advantage or surprise.” APAC Miss., Inc. v. Johnson, 15 So.3d 465, 473 (¶ 18) (Miss.Ct.App. 2009). However, this is not an instance where the supplemental responses to interrogatories and the designation of expert witnesses were merely delayed; they never occurred. Even during Dr. Schnitzer’s deposition, Singing River specifically objected to Dr. Schnitzer’s opinion testimony and to the fact that he had not been designated as an expert; yet Buckley still failed to designate him as an expert witness with the circuit court. We are not moved by Buckley’s argument that Singing River had notice. As already noted, hearing of an expert’s opinion for the first time at a deposition one month prior to the trial is not sufficient to provide Singing River with time to conduct a meaningful cross-examination or to assist its expert witness in preparing an adequate rebuttal to such testimony.
¶ 24. Buckley has not provided any reason why she was unable to formally designate Dr. Schnitzer as an expert witness and comply with the scheduling order. We reject Buckley’s contention that “the alleged failure to comply was a consequence of simple confusion or a misunderstanding of the Trial Court’s order.” Buckley’s counsel drafted the scheduling order; there should have been no confusion or misunderstanding as to the court’s requirements.
¶ 25. In Palmer v. Volkswagen of America, Inc., 904 So.2d 1077, 1090 (¶ 55) (Miss.2005), the supreme court held:
We cannot agree that parties who file appropriate interrogatories seeking expert information acquire the additional burden of filing a motion to compel, where they are provided an answer which promises supplementation. The trial court was well within its discretion in disallowing the testimony of Ms. Kruckenburg, based upon the failure of plaintiffs to provide expert information in response to either the interrogatory filed by defendants [or] the trial court’s scheduling order.
(Emphasis added). Also, Rule 4.04(A) of the Uniform Rules of Circuit and County Court states: “Absent special circumstances the court will not allow testimony at trial of an expert witness who was not designated as an expert witness to all at *374 torneys of record at least sixty days before trial.” “While the end result ... may appear to be harsh, litigants must understand that there is an obligation to timely comply with the orders of our trial courts.” Bowie, 861 So.2d at 1043 (¶ 16). As the circuit judge in this case expressed: “The Mississippi Rules of Civil Procedure are not advisory, and this Court’s Orders are not advisory.”
II. Whether Dr. Schnitzer lacked the requisite knowledge to testify.
¶ 26. Notwithstanding the discovery violations, without Dr. Schnitzer’s expert testimony, Buckley has no basis to establish causation for her negligence claim. The circuit court concluded: “The plaintiff failing to properly designate expert witnesses under the Scheduling Order was just a mere portion of the Court’s finding. Dr. Schnitzer, in fact, lacked the requisite factual knowledge to testify as an expert witness.” A circuit court’s admission or exclusion of expert testimony is reviewed for abuse of discretion. Denham v. Holmes ex rel. Holmes, 60 So.3d 773, 783 (¶ 34) (Miss.2011) (citing Investor Res. Servs., Inc. v. Cato, 15 So.3d 412, 416 (¶ 2) (Miss.2009)). Mississippi Rule of Evidence 702 governs the admissibility of expert testimony:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.
(Emphasis added). It is the circuit judge’s role to be the gatekeeper and “determine[ ] the value of the expert testimony.” Utz v. Running & Rolling Trucking, Inc., 32 So.3d 450, 457 (¶ 9) (Miss.2010) (citation omitted). The objective of this gate-keeping responsibility is to ensure that the expert testimony is relevant and reliable under the Daubert standard.[5] Hill v. Mills, 26 So.3d 322, 330 (¶ 27) (Miss.2010) (citing Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)).
¶ 27. During his deposition, Dr. Schnitzer testified that based on the information given to him by Buckley, it “appear[ed]” that the fall caused her back problems. However, Dr. Schnitzer acknowledged that he did not review Buckley’s medical records between December 2003 and August 2009 and that his conclusion was based directly on the history he obtained from Buckley. Dr. Schnitzer stated: “[A]s far as I recall, I cannot remember integrating other medical notes into my history of this patient at that time. So the only history I have was from her.” At the summary-judgment hearing on April 14, 2011, the circuit judge inquired:
THE COURT: But Dr. Schnitzer looked at nothing of Dr. Longnecker’s 2004 surgery, nothing between 2004 and 2009; is that correct?
[PLAINTIFF’S COUNSEL]: Yes, Your Honor, you’re correct.
THE COURT: How is he going to give you a causation, medical theory, if he doesn’t have all that information and hasn’t looked at it?
*375 [PLAINTIFF’S COUNSEL]: Well, it was based on the — I don’t know if he had an x-ray or not, but I know that he knew she had fusion surgery. It was based on the history that she had given to him.
(Emphasis added). At the subsequent hearing on the motion to set aside the summary judgment, Singing River’s counsel observed:
And when Mr. Citrin [counsel for Buckley] says that [Dr. Schnitzer] tied the proximate causation of Ms. Buckley’s injury to a fall that occurred at the hospital in 2005, Dr. Schnitzer, in his deposition, admitted that the only evidence he had that she fell, was from her directly. He had no medical records. He had no prior medical personnel who could tell him that there was any causal link, and he could not link the causation of her injury to a fall. He admitted that there’s other causes besides trauma that could cause her back injury.
¶ 28. In Biloxi Regional Medical Center v. David, 555 So.2d 58, 57 (Miss.1989), the supreme court concluded that a medical expert’s opinion, based merely on the plaintiffs remark that she severely stubbed her toe and received treatment, was “sufficient proof of causation.” However, the expert in that case was a physician who had looked at the plaintiffs foot immediately after the injury occurred. Id. at 54. In this case, Dr. Schnitzer did not begin treating Buckley until five years after her back surgery, which in turn was eight months after her fall at Singing River.
¶ 29. In John Morrell & Co. v. Shultz, 208 So.2d 906, 907 (Miss.1968), the supreme court held that a doctor’s opinion testimony based solely upon a history given to him by the patient was not sufficient evidence to deny the defendant’s motion for a directed verdict. In that case, the doctor treated the plaintiff for gastroenteritis, which allegedly was the result of consuming a defective food product. However, the supreme court found that since “the entire case ... rest[ed] upon Mrs. Shultz’s testimony as to what she thought caused her illness and the doctor’s opinion formed from the history of the illness related to him[,]” the evidence was insufficient to support a verdict. Id.
¶ 30. “Summary judgment may not be defeated through expert opinions that are not based on facts but instead are based on a guess, speculation, or conjecture.” Rogers v. Barlow Eddy Jenkins P.A., 22 So.Bd 1219, 1225 (¶ 21) (Miss.Ct. App.2009). Dr. Schnitzer merely made a conelusory statement that Buckley’s back complaints appeared to be result of a fall that occurred six years prior to his treatment. He admitted that he had no basis for his conclusion, other than the history from the patient herself. An expert witness “must possess some experience or expertise beyond that of an average, randomly selected adult[.]” Cowan v. Miss. Bureau of Narcotics, 2 So.3d 759, 763 (¶ 13) (Miss.Ct.App.2009) (citation omitted). If the speculative conclusion of the expert is not superior to any conclusion that the jury could draw for itself, then such expert testimony is “not necessary.” Denham, 60 So.3d at 788-89 (¶ 56). Thus, we cannot find that the circuit court abused its discretion by finding that Dr. Schnitzer “lacked the requisite factual knowledge to testify as an expert witness.”
¶ 31. Without Dr. Schnitzer’s testimony to establish proximate causation, Buckley’s claim fails. See Huggins v. GuideOne Services, LLC, 100 So.3d 499, 503 (¶ 14) (Miss. Ct.App.2012) (finding summary judgment was appropriate as the exclusion of expert witness “eliminated Huggins’s ability to provide evidence that faulty wiring proximately caused the fire.”). Accordingly, we *376 find that the circuit court did not err in granting Singing River’s motion for summary judgment and dismissing the case with prejudice.
¶ 32. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ„ CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.

. Buckley worked at Morrison's Cafeteria, a contracted restaurant business located inside the hospital.

. We note that discovery on this case was delayed due to Hurricane Katrina and substitution of counsel for Buckley.

. A previous scheduling order that was filed on April 15, 2010, had requested Buckley’s designation of expert witnesses before May 1, 2010.

.Buckley also brought two pretrial motions: a motion for partial summary judgment and a motion to strike the testimony of the defense's purported expert witnesses. These motions were considered moot after the circuit court's grant of summary judgement.

. Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).