# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-00750-COA

DEONNA STROUD, INDIVIDUALLY AND FOR AND ON BEHALF OF DAVID STROUD, A NON COMPOS MENTIS       APPELLANT

v.

PROGRESSIVE GULF INSURANCE COMPANY, VIRGINIA M. CONN, AND JENNIFER GUZMAN       APPELLEES

| | |
|---|---|
| DATE OF JUDGMENT: | 04/15/2016 |
| TRIAL JUDGE: | HON. ROBERT P. KREBS |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WAYNE E. FERRELL JR. |
| ATTORNEYS FOR APPELLEES: | GINNY Y. KENNEDY |
| | WADE G. MANOR |
| | CECIL MAISON HEIDELBERG |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 09/19/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., CARLTON, WILSON AND GREENLEE, JJ.**

**WILSON, J., FOR THE COURT:**

¶1. David Stroud was engaged in the business of hauling miscellaneous items and towing vehicles. In April 2010, either David or his wife, Deonna, contacted the Conn Insurance Agency, owned by Virginia Conn, to obtain "cargo coverage" required for David's business.[1] The Conn Agency sells Allstate insurance and has an Allstate sign, and the Strouds had a policy with Allstate; however, Allstate did not offer "cargo coverage" of the type they

---

[1] The amended complaint says that David contacted the Conn Agency. Deonna's subsequent affidavit says that she contacted the Conn Agency.

requested, so an employee of the Conn Agency, Jennifer Guzman,[2] obtained a policy through Progressive Gulf Insurance Company instead. In June 2010, David picked up a trailer in Ohio to deliver to a customer in Montana. Somewhere between Ohio and Montana, the trailer collided with a tree limb, and David's cargo was damaged. David submitted a claim to Progressive, but on July 15, 2010, Progressive notified David and his attorney that it had denied his claim, which eventually gave rise to the instant lawsuit.

¶2. Although the applicable statute of limitations is three years, Deonna filed suit, purportedly on behalf of David, three years *and seventeen days* after Progressive denied coverage. Deonna alleges that the statute of limitations was tolled because David has been non compos mentis *since 2003* as a result of a fall and injuries that he sustained that year. The circuit court granted summary judgment for all defendants because it concluded that there was no genuine issue of material fact and that the statute of limitations had run. We likewise conclude that the defendants were entitled to judgment as a matter of law based on the statute of limitations. Therefore, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶3. In April 2010, David or Deonna (*see supra* n.1) contacted the Conn Agency to obtain "mandatory cargo coverage" for David's "hauling business." David was engaged in the business of hauling "miscellaneous items" and towing vehicles in a truck and trailer. David or Deonna spoke to Guzman. David had Allstate insurance, but Guzman stated that Allstate

---

[2] The Strouds named "Jennifer Halford" as a defendant in their original and amended complaints. This defendant has repeatedly stated that her surname is Guzman, not Halford. The Strouds have never disputed this, so we will refer to the defendant as Guzman.

did not offer the requested coverage. Guzman sent the Strouds applications for insurance and later told them that she had obtained the requested coverage through Progressive. A Progressive policy was issued to David as the named insured.

¶4. In June 2010, David was hauling cargo of some sort from Ohio to a customer in Montana. As he was driving, the trailer he was hauling came into contact with a tree branch, and its cargo was damaged. He reported the collision to Conn/Guzman and Progressive, and Progressive investigated David's claim. On July 15, 2010, Progressive informed David that his claim was denied based on an exclusion in the policy.

¶5. On August 1, 2013, Deonna, purportedly on behalf of David, filed suit in the Jackson County Circuit Court against Progressive, Allstate, Conn, and Guzman. Deonna alleged that she filed the suit on behalf of David because he was a person non compos mentis, i.e., of unsound mind. The complaint demanded actual damages of $500,000 and punitive damages of $2,000,000 based on allegations that the defendants negligently or willfully failed to obtain the requested coverage and denied the claim in bad faith. Each defendant's answer asserted the statute of limitations as a defense.

¶6. On February 14, 2014, Progressive filed a motion for summary judgment arguing that the applicable three-year statute of limitations, Miss. Code Ann. § 15-1-49 (Rev. 2012),[3] ran on July 15, 2013, before the Strouds filed their complaint. Allstate subsequently filed a

---

[3] *See generally Oaks v. Sellers*, 953 So. 2d 1077 (Miss. 2007) (finding Mississippi Code Annotated section 15-1-49 applies to insured's claims alleging a failure to procure or misrepresentation of coverage); *Young v. S. Farm Bureau Life Ins.*, 592 So. 2d 103, 107-08 (Miss. 1991) (finding section 15-1-49 applies to a claim for wrongful refusal to pay benefits under an insurance policy).

3

motion for summary judgment based on the same statute of limitations. Allstate also argued that it was entitled to summary judgment because it did not issue the policy and had no connection to it. Conn and Guzman joined Progressive's and Allstate's motions.

¶7. In response, the Strouds did not dispute that section 15-1-49 provides the applicable statute of limitations. Nor did they dispute that their complaint was filed more than three years after Progressive denied their claim. Rather, they argued that Mississippi Code Annotated section 15-1-59 (Rev. 2012) tolled the statute of limitations because David was a person "under the disability of . . . unsoundness of mind" (i.e., non compos mentis) at all times relevant to his claim. They alleged that David's non compos mentis status arose from head and brain injuries that he suffered in 2003 when he fell approximately thirty feet from the roof of a house.

¶8. At a hearing on May 29, 2014, the circuit judge sua sponte raised the issue of Deonna's standing to file suit on David's behalf given that she had never been appointed as his conservator. Following the hearing, the judge entered an order staying the case to allow Deonna to initiate proceedings to be appointed as David's conservator.

¶9. Deonna petitioned the Walthall County Chancery Court to be appointed as David's conservator. Her petition attached affidavits from two physicians, and at a brief hearing on the petition, she and David both testified that she should be appointed as his conservator. On October 6, 2014, the chancery court entered an order appointing Deonna as conservator of David's person and estate. The Strouds then filed a motion in circuit court for partial summary judgment on the statute of limitations issue.

4

¶10.  On March 3, 2016, the circuit court held a hearing on the motions for summary judgment and partial summary judgment. The Strouds relied on the affidavits of Deonna and two physicians and the petition, order, and transcript in the conservatorship proceeding. The defendants argued that the Strouds failed to present competent evidence that David was non compos mentis at any time between July 15, 2010, and August 1, 2013.

¶11.  At the conclusion of the hearing, the circuit judge announced from the bench that he would grant all defendants' motions for summary judgment, and he subsequently entered orders to that effect. The court ruled that the statute of limitations had run as to all defendants because the Strouds could not establish David's lack of capacity so as to toll the statute of limitations. The court also ruled that Allstate was entitled to summary judgment because the relevant insurance contract was not with Allstate. Deonna filed a timely notice of appeal as to Progressive, Conn, and Guzman. She did not appeal as to Allstate.

**ANALYSIS**

¶12.  The basic issue in this appeal, which we review de novo, is whether the defendants were entitled to judgment as a matter of law because there was no genuine issue of material fact as to whether David was a person of unsound mind during the limitations period. We also address Deonna's argument that the circuit judge erred by relying on the fact that David had a Mississippi driver's license during the relevant period. Finally, we address Deonna's additional argument that David's claims against Conn and Guzman are not barred by the statute of limitations. Deonna argues that Conn and Guzman "never denied coverage," so David's claims against them did not accrue until they answered the complaint.

5

**I.** **There is no genuine issue of material fact as to whether David was "under the disability of . . . unsoundness of mind" during the limitations period.**

¶13.    We review the circuit court's order granting summary judgment de novo. *Rockwell v. Preferred Risk Mut. Ins.*, 710 So. 2d 388, 389 (¶4) (Miss. 1998). Summary "judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). "The focal point of our standard for summary judgment is on *material* facts," which means those facts "*that matter[] in an outcome determinative sense*." *Simmons v. Thompson Mach. of Miss. Inc.*, 631 So. 2d 798, 801 (Miss. 1994). "The existence of a hundred contested issues of fact will not thwart summary judgment where there is no genuine dispute regarding the material issues of fact." *Sanders v. Advanced Neuromodulation Sys. Inc.*, 44 So. 3d 960, 965 (¶11) (Miss. 2010) (quoting *Moss v. Batesville Casket Co.*, 935 So. 2d 393, 399 (¶17) (Miss. 2006)); *see also Summers ex rel. Dawson v. St. Andrew's Episcopal Sch. Inc.*, 759 So. 2d 1203, 1208 (¶12) (Miss. 2000) ("Numerous, immaterial facts may be controverted, but only those that affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." (Quotation marks omitted)).

¶14.    We view the evidence in the light most favorable to the nonmoving party. *Buckley v. Singing River Hosp.*, 146 So. 3d 365, 369 (¶9) (Miss. Ct. App. 2013) (citing *Smith v. Chhabra*, 54 So. 3d 877, 880 (¶11) (Miss. Ct. App. 2011)). However, the nonmoving "party may not rest upon the mere allegations or denials of his pleadings, but his response, by

6

affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." M.R.C.P. 56(e).

¶15. When, as in this case, "a defendant pleads a statute of limitations as a defense and shows that the suit is thereby barred, he has met this burden of proof. Where the plaintiff asserts that his case is not barred by the statute of limitations, the burden is on him to show some legal or equitable basis for avoiding such period of limitations." *Hall v. Dillard*, 739 So. 2d 383, 387-88 (¶19) (Miss. Ct. App. 1999) (citing *Gulf Nat'l Bank v. King*, 362 So. 2d 1253, 1255 (Miss. 1978)); *accord, e.g.*, *Sullivan v. Trustmark Nat'l Bank*, 653 So. 2d 930, 931-32 (Miss. 1995); *Archer v. Nissan Motor Acceptance Corp.*, 633 F. Supp. 2d 259, 265 (S.D. Miss. 2007), *aff'd*, 550 F.3d 506 (5th Cir. 2008).

¶16. In addition, under Mississippi law, "in order to prove that one is non compos mentis, it must be proven by clear and convincing evidence, rather than by a preponderance of the evidence, and must be proven by the proponent of that position." *Morgan v. Citizens Bank*, 912 So. 2d 1133, 1136 (¶13) (Miss. Ct. App. 2005) (citing *Smith v. Smith*, 574 So. 2d 644, 652 (Miss. 1990)). When, as in this case, the nonmoving party must prove a material fact by clear and convincing evidence, the court must take that into account when ruling on a motion for summary judgment. *See Haygood v. First Nat'l Bank of New Albany*, 517 So. 2d 553, 555-56 (Miss. 1987) (following *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242 (1986)). "[T]he appropriate summary judgment question [is] whether the evidence in the record could support a reasonable jury finding [for] the plaintiff [on the material issue of fact] by clear and convincing evidence . . . ." *Id.* at 556 (quoting *Anderson*, 477 U.S. at 255-56); *see also*

7

*Towner v. Moore ex rel. Quitman Cty. Sch. Dist.*, 604 So. 2d 1093, 1098 (Miss. 1992) ("[W]e have long since accommodated our summary judgment process to the 'clear and convincing' quantum of proof requirement.").

¶17.    Applying these standards, we address de novo the question whether the evidence presented by the Strouds was sufficient to create a genuine issue of material fact as to whether the statute of limitations was tolled during the relevant limitations period. There is no dispute that the Strouds' claims are subject to a three-year statute of limitations, Miss. Code Ann. § 15-1-49, and that the Strouds filed suit more than three years after Progressive denied coverage. The only real issue on appeal concerns the application of section 15-1-59, the "savings statute," which provides:

> If any person entitled to bring any of the personal actions mentioned shall, at the time at which the cause of action accrued, be under the disability of infancy or unsoundness of mind, he may bring the actions within the times in this chapter respectively limited, after his disability shall be removed as provided by law. However, the saving in favor of persons under disability of unsoundness of mind shall never extend longer than twenty-one (21) years.

¶18.    "The purpose of the savings statute is to protect the legal rights of those who are unable to assert their own rights due to disability." *Rockwell*, 710 So. 2d at 391 (¶11). "The Mississippi Supreme Court addressed the law regarding mental competency and statutes of limitation in *Shippers Express v. Chapman*, 364 So. 2d 1097, 1100 (Miss. 1978)[.]" *Brumfield v. Lowe*, 744 So. 2d 383, 387 (¶20) (Miss. Ct. App. 1999). "The test as to whether the claimant is so 'mentally incompetent' as to toll the running of the statute of limitations, is this: Is his mind so unsound, or is he so weak in mind, or so imbecile, no matter from what cause, that he cannot manage the ordinary affairs of life?" *Id.* (quoting *Shippers Express*,

8

364 So. 2d at 1000); *accord USF&G Co. v. Conservatorship of Melson*, 809 So. 2d 647, 653

(¶23) (Miss. 2002); *Reeg v. Keel*, 174 So. 3d 309, 312 (¶9) (Miss. Ct. App. 2015).

¶19.  In opposition to summary judgment, the Strouds offered three affidavits from doctors

and one medical evaluation report.  Two of the affidavits are from Dr. Howard Katz, who

states that he is "board certified in brain injury, psychiatry and spinal cord injury."  Dr.

Katz's first affidavit—which was signed August 26, 2014, and submitted in the

conservatorship proceeding—contains only one paragraph regarding David's condition,

which states as follows:

> Mr. Stroud was involved in a serious accident in October 2003, when he fell
> approximately 30 feet; fractured multiple bones; and suffered substantial
> injuries to his head and brain.  I am of the opinion that as a result of the head
> and brain injuries Mr. Stroud has been left with poor concentration, poor
> memory, word finding difficulty and trouble with his focus and concentration
> which are consistent with brain injury.  I am of the opinion that David Stroud
> is not competent to handle his affairs, is a non compos mentis, and has not
> been competent to handle his affairs since his accident in October 2003.  I
> believe that Mr. Stroud's inability to manage his affairs is so severe that a
> Conservator should be considered to manage his estate.

¶20.  Dr. Katz's second affidavit (signed April 22, 2015) is similar and also contains only

one paragraph regarding David's condition, which states as follows:

> It is my opinion that David Stroud sustained a severe brain injury in his fall in
> Virginia on or about October 11, 2003.  Based upon my review of the medical
> records, the report from Dr. Mark Webb, and my own evaluation of Doug [sic]
> Stroud, I am of the opinion that David Stroud is not presently able and has not
> been competent to manage his affairs since October 11, 2003, the date he fell
> approximately 40 feet on his head causing substantial brain injury and
> damages.

¶21.  The third affidavit and the medical evaluation report are from Dr. Mark Webb, a board

certified neuropsychiatrist.  Dr. Webb's April 16, 2014 report notes that David "has never

9

had any psychiatric or psychological treatment." The report subsequently provides the following evaluation and conclusions regarding David's mental status:

> Mr. Stroud is an alert and cooperative, logical and coherent, extremely forgetful white male who exhibits a lot of anxiety. His speech and psychomotor activity are increased. His speech rate mid volume are increased. He denies any hallucinations, delusions, past or present homicidal or suicidal ideation. Insight and judgment are good with his memory and concentration poor. He has great difficulty with recall and has trouble remembering things. He also has a lot of word finding difficulty and trouble with numbers. He has extremely poor short term memory. He cannot remember certain things in our interview that were talked about earlier in the interview. . . . He does not describe any manic [or] hypomanic . . . episodes.
>
> . . . .
>
> Mr. Stroud went through a very difficult incident in October 2003. He fell a long way and fractured multiple bones. He also suffered whiplash injury to his head and brain. As a result of this he has been left with poor concentration, poor memory, word finding difficulty and trouble with his focus and concentration, which is consistent with Mild Neurocognitive Disorder.
>
> Mr. Stroud is also suffering from Posttraumatic Stress Disorder. He went through a very traumatic incident and has been left with nightmares, fear, intrusive thoughts, detached emotions, anger, and irritability.
>
> I made Mr. Stroud completely aware of the purpose and ramifications of his interview and he consents to both.
>
> . . . . Mr. Stroud could benefit from treatment with a psychiatrist to help his PTSD symptoms subside and a neuropsychiatrist and neuropsychologist to help with his Mild Neurocognitive Disorder. He could also benefit from medication to help with both of the illnesses. As a result of both illnesses, Mr. Stroud is disabled from returning to work.

¶22. Dr. Webb's September 2014 affidavit, which was submitted in the conservatorship proceeding, is similar in substance to his report. Much like Dr. Katz's affidavit, it concludes: "I am of the opinion that David Stroud is not competent to handle his affairs and has not been

competent to handle his affairs since his accident in October 2003. I believe that Mr. Stroud's inability to manage his affairs is so severe that a Conservator should be considered to manage his estate."

¶23. The record also includes an affidavit signed by Deonna that states in relevant part: "Ever since my husband's accident in October 2003, I have had to manage his business for him, as he is unable to do so on his own because of his extreme inability to remember, both long and short term, and because of his inability to concentrate." The Strouds also rely on the order of the chancery court appointing Deonna as David's conservator and the transcript of the hearing in the chancery court. The chancellor granted Deonna's unopposed petition based on the affidavits discussed above, following a brief hearing during which David expressly consented to the conservatorship.

¶24. The appellees argue that the Strouds' evidence is insufficient to create a genuine issue of material fact. They note that there is no evidence that Dr. Webb or Dr. Katz saw David prior to April 2014—which was months after the statute of limitations had run and after the defendants had already moved for summary judgment. The defendants also emphasize that the underlying claim arose out of David's "hauling business" and that David was in the process of hauling cargo from Ohio to Montana when the underlying insurance claim arose. The defendants further note that David spoke to an adjuster on the day of the incident and had already retained an attorney to assist with the claim by the time it was denied in July 2010. They argue that on these facts no reasonable jury could find by clear and convincing evidence that David's mind was so unsound that he was unable to manage the ordinary

11

affairs of life for a decade prior to the commencement of the lawsuit.

¶25.    We agree with the circuit court that the affidavits and other evidence submitted by the Strouds fail to create a genuine issue of material fact.  The doctors' affidavits contain broad and conclusory assertions that David was "non compos mentis" and incompetent "to handle his affairs."  The doctors also assert that David's incompetence had persisted for more than a decade before they ever evaluated him.  However, the doctors' affidavits are devoid of facts to support their opinions on what is ultimately an issue of law.  For instance, Dr. Webb's report states that David was "alert and cooperative, logical and coherent," and that his "[i]nsight and judgment are good[.]"  Dr. Webb also noted that David had "never had any psychiatric or psychological treatment."  The issues that Dr. Webb raised were that David was "extremely forgetful," experienced "a lot of anxiety," had "poor" concentration, and "also has a lot of word finding difficulty and trouble with numbers."  Dr. Webb ultimately diagnosed David with "Mild Neurocognitive Disorder" and PTSD.

¶26.    The issues raised by the doctors do not create a genuine issue of material fact as to whether David's condition satisfies the "test as to whether [he] is so 'mentally incompetent' as to toll the running of the statute of limitations," which, again, "is this: Is his mind so unsound, or is he so weak in mind, or so imbecile, no matter from what cause, that he cannot manage the ordinary affairs of life?" *Brumfield*, 744 So. 2d at 387 (¶20) (quoting *Shippers Express*, 364 So. 2d at 1000).  There are no facts in the record to show that David's difficulties with memory and concentration rendered him unable to manage the ordinary affairs of life.  Indeed, the facts alleged in his own complaint refute the notion.  The amended

12

complaint states that "David Stroud contacted [the Conn agency] to request mandatory cargo coverage for David Stroud's business which included hauling miscellaneous items and towing vehicles." David further alleges that his claim arose while he was engaged in his hauling business—and transporting cargo from Ohio to Montana. The record also indicates that an attorney was already assisting David with this claim by the time it was denied in July 2010. Under the circumstances, the circuit court correctly concluded that no reasonable jury could find by clear and convincing evidence that David was of such an unsound mind that he was incapable of managing the ordinary affairs of his life.

¶27. The defendants also raise substantial questions about the doctors' ability to opine about David's competence and mental status years before they ever met him. *Cf. Buckley*, 146 So. 3d at 374-75 (¶¶27-30) (holding that an expert opinion based solely on patient-provided history provided years after the injury was insufficient to establish causation). Dr. Webb and Dr. Katz recite that they reviewed David's medical records, but they do not explain how those records establish that he had been incompetent for a decade. The doctors' opinions that David has been of unsound mind and incompetent to manage his affairs for ten years are insufficient to create a genuine issue of fact because they are conclusory and unsupported by facts. "A conclusory expert affidavit that fails to explain the underlying 'how, when, and why' is insufficient to withstand summary judgment." *Gray v. Dimitriades*, 211 So. 3d 738, 745 (¶29) (Miss. Ct. App. 2016), *cert. denied*, 204 So. 3d 288 (Miss. 2016) (quoting *Perez v. Univ. of Miss. Med. Ctr.*, 75 So. 3d 609, 611-12 (¶¶13, 16) (Miss. Ct. App. 2011)); *accord Dalton v. Cellular S. Inc.*, 20 So. 3d 1227, 1234 (¶16) (Miss. 2009). Expert

13

opinions must be based on facts, not the mere "ipse dixit of the expert." *Watts v. Radiator Specialty Co.*, 990 So. 2d 143, 149 (¶17) (Miss. 2008) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

¶28. The only relevant factual claims supported by competent evidence are that David suffered serious injuries in a fall a decade earlier; that Deonna manages his financial affairs; that he has difficulty concentrating and remembering things; and that he has been diagnosed with PTSD and Mild Neurocognitive Disorder, although he has never required any psychological or psychiatric treatment. However, it is also undisputed that David owned and operated his own commercial hauling business and that his underlying insurance claim arose from his work hauling cargo from Ohio to Montana. On these facts, the circuit court correctly ruled that there was no genuine issue of fact. No reasonable jury could find by clear and convincing evidence that David was disabled due to unsound mind during the relevant period. *See Vick v. Brandon HMA LLC*, 167 So. 3d 259, 262-63 (¶¶16-18) (Miss. Ct. App. 2015) (holding that the statute of limitations was not tolled because although the plaintiff relied on her family to manage her finances and for transportation, the record showed that she had a job, was married, participated in church activities, made important healthcare decisions, and participated in the litigation); *Brumfield*, 744 So. 2d at 387-88 (¶22) (holding that the statute of limitations was not tolled because although the plaintiff received Social Security disability based on his schizophrenia, he was married, had children, managed his own money, hired an attorney, and testified coherently).

¶29. The Strouds' reliance on the order appointing Deonna as David's conservator is also

unavailing. To begin with, the order addressed David's status in 2014, after the statute of limitations had run. In addition, the appointment of a conservator does not necessarily or in all cases establish that the person is wholly incompetent, of unsound mind, and unable to manage the ordinary affairs of life. *See Harvey v. Meador*, 459 So. 2d 288, 291-92 (Miss. 1984). Finally, the defendants were not parties to the conservatorship proceeding and clearly are not bound or estopped by the order granting Deonna's unopposed petition. *See Weaver v. City of Pascagoula*, 527 So. 2d 651, 652 (Miss. 1988) (holding that collateral estoppel cannot be asserted against a party who was "neither party nor privy to the prior action").[4]

## II. The circuit court's reliance on David's possession of a driver's license is immaterial and does not require reversal.

¶30. At the hearing on the motions for summary judgment, the circuit judge asked David's attorney whether David had a valid driver's license at the time of the collision that gave rise to his claim, and the attorney responded affirmatively. In his ruling from the bench, the circuit judge noted that Mississippi law provides that no driver's license may be issued to any person whose mental disability prevents him from operating a motor vehicle safely and to any person adjudged to be under a mental disability who has not been restored to mental competency. *See* Miss. Code Ann. § 63-1-9(1)(d)-(e) (Supp. 2016). This was not the sole

---

[4] We also note that Deonna alleges that she has been managing David's business and affairs since 2003—effectively acting as his conservator—and that she filed this suit in 2013, purportedly "on behalf of David . . . , a non compos mentis," even though no court had appointed her as his conservator. Had Deonna actually been appointed as David's conservator in 2003—or at any time prior to August 2010—she clearly would have no tolling argument. *See Conservatorship of Melson*, 809 So. 2d at 654 (¶27) ("Where a . . . conservator has been court appointed . . . , there is no logical or equitable reason to prevent the running of the statute of limitations inasmuch as that . . . conservator is fully authorized to employ attorneys and bring actions on [the ward's] behalf.").

15

basis of the court's ruling, nor was it referenced in the court's written order. Nonetheless, the Strouds argue that by referencing the statute, the court relied on facts outside the record and granted summary judgment based on a "defense" that the defendants never pled.

¶31. On appeal from an order granting summary judgment, we will affirm if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. We review the record de novo without deference to the circuit court's reasoning or conclusions. Accordingly, this Court's decision on appeal does not turn on or require approval or disapproval of the precise reasoning that the circuit court gave for its ruling. This Court "may affirm a [circuit] court if the correct result is reached, even if the [circuit] court reached the [correct] result for the wrong reasons." *Methodist Hosp. of Hattiesburg Inc. v. Richardson*, 909 So. 2d 1066, 1070 (¶7) (Miss. 2005). As discussed in the preceding section, based on our de novo review of the record, there is no genuine issue of material fact and the defendants are entitled to judgment as a matter of law. This is so regardless of whether David had a driver's license. Accordingly, the circuit court's reference to David's license is simply irrelevant.

### III. Conn and Guzman were also entitled to summary judgment.

¶32. As noted above, the Strouds make an alternative argument that Conn and Guzman were not entitled to summary judgment because they "never denied coverage," so David's claims against them did not accrue until, "at the earliest," they answered the complaint and denied liability. The Strouds cite no legal authority in support of this argument.

¶33. In a case such as this, the law is clear that a claim that an insurance agent failed to

procure the coverage requested by the insured accrues and the statute of limitations begins to run, *at the very latest*, when the insured receives notice of the denial of his claim. *Oaks*, 953 So. 2d at 1083-84 (¶¶23-25); *accord Bank of Commerce v. SouthGroup Ins. & Fin. Servs. LLC*, 73 So. 3d 1106, 1109-11 (¶¶17-23) (Miss. 2011). When the insured is denied the coverage that he allegedly requested, he is "on notice of a possible problem with the procurement and understanding of the terms of his insurance policy," and the statute of limitations begins to run (if some prior event has not already triggered it). *Oaks*, 953 So. 2d at 1084 (¶24). That Conn and Guzman did not formally deny coverage is irrelevant. The insurer is responsible for making coverage determinations, not the agent who sold the policy. Progressive's denial of David's claim put the Strouds "on notice of a possible problem," so the statute of limitations on all their claims began to run on that date, at the very latest. Accordingly, Conn and Guzman were also entitled to summary judgment.

**CONCLUSION**

¶34. The circuit court correctly concluded that the Strouds failed to create a genuine issue of material fact as to whether David was "under the disability of . . . unsoundness of mind" during the limitations period. Miss. Code Ann. § 15-1-59. Because the Strouds filed suit more than three years after Progressive denied their claim, their claims are barred by the statute of limitations. Accordingly, the circuit court properly granted summary judgment in favor of Progressive, Conn, and Guzman.

¶35. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, GREENLEE AND WESTBROOKS, JJ., CONCUR.**

17